Etta Mae DUNCAN, as Personal Representative of the Estate of David Willis Duncan, Appellant (Plaintiff),

v.

TOWN OF JACKSON, and its employees, Officer Larry Compton and Lt. David W. Foster, Appellees (Defendants).

No. 94–177.

Supreme Court of Wyoming.

Oct. 5, 1995.

Robert W. Tiedeken (argued), of Wolf & Tiedeken, Cheyenne; and Jeremy Michaels of Michaels & Michaels, Gillette, for Appellant.

Sara E. Van Genderen and R. Michael Mullikin (argued), of Mullikin, Larson & Swift, Jackson, for Appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

LEHMAN, Justice.

Appellant Etta Mae Duncan, Personal Representative of the Estate of David Willis Duncan, filed a wrongful death suit against appellees Town of Jackson and its employee Lieutenant David Foster (Lt. Foster). Town of Jackson and Lt. Foster were granted summary judgment by the trial court, and appellant appeals. The issue we decide concerns whether the district court erred in concluding that Lt. Foster owed no duty to the deceased, David Duncan.

We reverse and remand.

On June 21, 1992, a dispatcher for the Town of Jackson received a 911 call reporting that a dark red pickup with camper shell had gone off the west side of Highway 89 in front of the caller. The dispatcher conveyed the report to the Wyoming Highway Patrol dispatch center and broadcast the report over a radio channel heard by several law enforcement agencies in the Jackson area.

Lt. Foster of the Jackson Police Department was the first person to answer the broadcast. Lt. Foster, off-duty in his unmarked police car, radioed dispatch and relayed that he was responding to the report. Activating siren and emergency lights, Lt. Foster proceeded to the reported accident scene pursuant to an emergency response.

Upon arrival, Lt. Foster immediately located a reddish pickup with camper shell in a field approximately 1,000 feet off of the highway and down an embankment. After verifying the vehicle description with dispatch, Lt. Foster exited his car and proceeded down the embankment to investigate. About a quarter of the way down the embankment, Lt. Foster became concerned about his young son being left alone in his car, and he proceeded back up the embankment to his car and his son. Once he had secured his son, Lt. Foster once again proceeded down the embankment.

While Lt. Foster was proceeding down the embankment a second time, a Teton county deputy sheriff arrived on the scene. Instead of proceeding down the embankment to the vehicle in the field, Lt. Foster went back up the embankment to talk with the deputy sheriff. Lt. Foster and the deputy then checked for tire marks leaving the highway and used binoculars to check for signs of a broken fence in the field and damage to the vehicle rather than physically going down the embankment to check for injured occupants and examine the scene.

Within minutes, the ambulance crew arrived at the scene and was directed to return to Jackson. Dispatch was notified that the report was false and that it should cancel the report. Dispatch notified the Wyoming Highway Patrol that the report was canceled. The next morning, a ranch hand found David Duncan dead in the driver's seat of the pickup.

Appellant filed suit pursuant to the Wyoming Governmental Claims Act and Wrongful Death Act, alleging that Lt. Foster was negligent in investigating the fatal car accident. The district court granted summary judgment in favor of appellees, ruling that an off-duty police officer, not acting within the scope of his duties, is not liable to a plaintiff where no special relationship is established. Appellant timely appeals.

### STANDARD OF REVIEW

When we review summary judgment, we follow our familiar standard of review:

"Summary judgment is appropriate when no genuine issue of material fact exists and when the prevailing party is entitled to have a judgment as a matter of law." *Sandstrom v. Sandstrom,* 884 P.2d 968, 971 (Wyo.1994). *See also* W.R.C.P. 56(c).

A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. The party moving for summary judgment bears the initial burden of establishing a prima facie case for a summary judgment. If the movant carries this burden, the party opposing the summary judgment must come forward with specific facts to demonstrate that a genuine issue of material fact does exist.

*Thunder Hawk By and Through Jensen v. Union Pacific Railroad Company*, 844 P.2d 1045, 1047 (Wyo.1992) (citation omitted). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Kilmer v. Citicorp Mortgage, Inc.*, 860 P.2d 1165, 1167 (Wyo.1993). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Thunder Hawk By and Through Jensen*, 844 P.2d at 1047.

*Bidache, Inc. v. Martin*, 899 P.2d 872, 873–74 (Wyo.1995) (*quoting Adkins v. Lawson*, 892 P.2d 128, 130 (Wyo.1995)). We review the grant of summary judgment without according any deference to the district court's decisions on issues of law. *Halpern v. Wheeldon*, 890 P.2d 562, 564 (Wyo.1995); *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1325 (Wyo.1995). Summary judgment is not favored in negligence actions and is subject to more exacting scrutiny. *Tidwell*, at 1325 (*citing MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo. 1990)). However, even in negligence actions, summary judgment may be appropriate, especially if a plaintiff cannot establish the existence of a duty on the part of a defendant. *Tidwell*, at 1325. We will affirm a grant of summary judgment if it can be sustained on any legal ground appearing in the record. *Bidache*, at 874 (*citing Moncrief v. Louisiana Land & Exploration Co.*, 861 P.2d 516, 523 (Wyo.1993)).

This standard of review is applicable only to the designated record that has been transmitted to this court; materials not designated but included in the record will not be considered. W.R.A.P. 3.05. In the instant case, the record relied upon by appellees was not designated. Therefore, this court is hindered in its review because we do not have before us all of the information the trial court had. Nevertheless, we apply our standard of review to the record transmitted to us, giving all favorable inferences to appellant.

### DISCUSSION

Although the issue of duty is usually decided by the district court as a matter of law, we have held that when the duty issue involves questions which are basic issues of fact, it should be resolved by the jury. In *Halpern*, at 565, we stated:

In order to recover in any negligence action, a plaintiff must establish that the defendant owed a duty of care to him. *See Roybal v. Bell*, 778 P.2d 108, 111 (Wyo. 1989). Generally, the issue of duty is decided by the court as a matter of law. *Id.* In certain instances, however, the duty issue involves questions which are basic issues of fact. For example, in *Thunder Hawk by and through Jensen v. Union Pacific Railroad Company*, 844 P.2d 1045 (Wyo.1992), we adopted the Restatement (Second) of Torts § 339 (1965) as the test to be utilized in determining whether a defendant owes a duty to a child trespasser under the "attractive nuisance" doctrine. 844 P.2d at 1048–49. In *Thunder Hawk by and through Jensen*, we stated that genuine issues of material fact existed with regard to whether the defendant owed a legal duty to the child trespasser and ruled that those issues should be resolved by the jury. *Id.*

In order to resolve this appeal, we must determine whether the duty issue in this case is purely a question of law where the basic facts are undisputed or whether the duty issue can be determined only by resolving basic facts, similar to the situations in *Thunder Hawk by and through Jensen v. Union Pacific Railroad Co.*, 844 P.2d 1045 (Wyo. 1992) and *Halpern*.

■ As a preliminary matter, we acknowledge that appellant may prevail only if she has alleged sufficient facts to establish that Lt. Foster was acting within his scope of duties at the time he responded to the emergency bulletin. Wyoming Statute 1–39–112 (1988 Rpl.) provides that "[a] governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties." Section 1–39–103 (1992 Cum.Supp.) defines "scope of duties" as meaning "performing any duties which a governmental entity requests, requires or authorizes a public employee to perform regardless of the time and place of performance." Thus, appellant must allege sufficient facts to put into dispute that Lt. Foster owed a duty to Mr. Duncan, and demonstrate that such duty was within his scope of duties as a peace officer.

■ Duty sufficient to support a negligence action may be engendered by common law, statute or contract. *Tidwell,* at 1325. In Wyoming, peace officers acting within the scope of their duties have a common law duty to act as reasonable peace officers of ordinary prudence under like circumstances. *Keehn v. Torrington,* 834 P.2d 112, 114 (Wyo. 1992); *Brown v. Avery,* 850 P.2d 612, 615 (Wyo.1993).

In its summary judgment order, the district court concluded that based upon *Hill v. Park County,* 856 P.2d 456 (Wyo.1993), "it is apparent that an off-duty police officer not acting within the scope of his duties, is not liable to a plaintiff where no special relationship is established." We disagree. In *Hill,* we concluded that the appellant had failed to establish any common law duty or any other duty which required an off-duty police officer to corral or warn traffic of stray animals on or near a public roadway, other than the actions taken by him. As such, no issues of material fact remained, and appellees were entitled to judgment as a matter of law. *Id.,* at 459–60. The entire proposition and basis for this holding was that the appellant had to establish a duty, either by common law, statute, or otherwise, owed by the appellee to the appellant. We did not resolve whether appellee was acting within his scope of duties at the time in question because appellant failed to establish any duty and because appellee acted reasonably under the circumstances. Because this case is distinguishable from *Hill* on its facts and circumstances, we must determine whether appellant can establish that Lt. Foster owed a duty to Mr. Duncan.

Appellant contends that Lt. Foster was authorized to respond to the emergency bulletin and that, once he did in fact respond to the emergency, he was acting within the scope of his duties and had a duty to act as a reasonable peace officer under the existing circumstances. Lt. Foster is a police officer for the Town of Jackson; the accident occurred outside Jackson's town limits, but within the boundaries of Teton County. A Joint Powers Agreement exists between Teton County and the Town of Jackson, which provides in part:

> 3. *Authorization to Act.* Those patrolmen of the Jackson Police Department designated from time to time as deputy sheriff for Teton County, Wyoming, as above set forth, are hereby authorized to act in the capacity of a deputy sheriff for Teton County, Wyoming outside the corporate limits of the Town of Jackson, Wyoming and otherwise within Teton County, Wyoming, when (1) On a case by case basis they are expressly requested to do so by the Teton County Sheriff, Undersheriff, any deputy sheriff, or radio dispatcher or other staff personnel of the Teton County Sheriff's Department; (2) When necessary to preserve life and limbs. * * *
>
> * * * * * *
>
> 5. *Off–Duty Personnel.* The authority granted by this Agreement does not extend to "off-duty" personnel of the Teton County Sheriff's Department or the Jackson Police Department, *except in life threatening situations.*

(Emphasis added.) Thus, Jackson police officers are authorized to officially act outside Jackson's town limits and within Teton County under certain situations, even in situations when they may technically be "off-duty."

The Jackson police department manual also authorizes, and in some instances requires, off-duty officers to act within their scope of official duties in certain situations.

Under Rule 4.07 of the manual, every Jackson police officer is assigned a department vehicle and is "encouraged to use Town-owned vehicles in all off-duty activities within the Jackson Police service area, which is generally defined as within 10 miles of the Jackson Town limits." One of the stated purposes for this provision is the availability to summon off-duty officers to respond in emergency situations in equipped police vehicles. The regulations require off-duty officers to leave their police vehicle radios turned on. Additionally, Jackson Police Department Regulation 4.07.03(L) provides:

L. In minor cases encountered off-duty, the officer may summon an on-duty car to handle the call, and stand by and assist until the on-duty car arrives. In the event immediate action is necessary, the off-duty officer will handle the situation.

Appellees argue that the Joint Powers Agreement and the Jackson Police Department regulations did not create a duty upon Lt. Foster to respond to emergency calls outside Jackson's town limits while off-duty and, thus, he owed no duty to Mr. Duncan. The district court agreed, stating in its summary judgment order:

The Car Each Policy [Regulation Rule 4.07 et seq.] and the Joint Powers Agreement have purposes other than extending jurisdiction. The contract between the two entities did not act to extend a duty to the plaintiff.

We believe the crucial inquiry is whether Lt. Foster was authorized to officially respond outside the Jackson town limits. After reviewing the Joint Powers Agreement, together with the Jackson police department regulations, we believe that Lt. Foster was authorized to officially respond to emergency calls outside the Jackson town limits under certain circumstances, even while off-duty.

Was this one of those situations in which Lt. Foster was authorized to respond and act in his official capacity as a peace officer? That question cannot be answered without resolving the basic facts of the case, which will be dispositive of the issue. Because the issue of duty cannot be determined without resolving and developing basic facts,

this issue becomes one for the trier of fact to determine. See Halpern, 890 P.2d at 565 and Thunder Hawk by and through Jensen, 844 P.2d at 1048–49.

Appellant has put forth sufficient evidence to put into dispute whether Lt. Foster owed Mr. Duncan a legal duty. Genuine issues of material fact exist, and they include but are not limited to: 1) whether this was a situation to which Lt. Foster was authorized to officially respond and take action under the Joint Powers Agreement and the Jackson police department regulations; 2) whether Lt. Foster was acting within his scope of official duties; 3) whether, even if Lt. Foster was not required to respond to the emergency, once he did respond he owed a legal duty to Mr. Duncan; 4) whether, if Lt. Foster did owe a duty to Mr. Duncan, that duty was discharged upon the arrival of the Teton county deputy sheriff; and 5) whether, if the trier of fact determines Lt. Foster was acting within his scope of duties with authority, he acted as a reasonable peace officer of ordinary prudence under like circumstances. Keehn, 834 P.2d at 114; Brown, 850 P.2d at 615. All of these issues need to be resolved by the trier of fact. See Halpern, at 565 and Thunder Hawk by and through Jensen, at 1048–49.

Appellees additionally argue that it was not established whether Lt. Foster was deputized by the Teton county sheriff, as provided under the Joint Powers Agreement. This contention is premature and will be resolved by the trier of fact. Appellees also argue that none of Lt. Foster's actions were the proximate cause of Mr. Duncan's injuries and death. Proximate cause is usually a question of fact, reserved for the trier of fact's determination unless the evidence is such that reasonable minds could not disagree. Natural Gas Processing Co. v. Hull, 886 P.2d 1181, 1186 (Wyo.1994); Lynch v. Norton Const., Inc., 861 P.2d 1095, 1099 (Wyo.1993). This issue has not been fully developed, and we cannot say that reasonable minds could not disagree. Therefore, this issue is also premature; and if it ripens into an issue, it should be resolved by the trier of fact.

As a procedural matter, the trier of fact must decide whether Lt. Foster was acting within the scope of his official duties. *See Halpern,* at 566. If the trier of fact determines that he was not, then appellees will be insulated from liability under the Wyoming Governmental Claims Act. If, however, the trier of fact determines that Lt. Foster was acting within the scope of his official duties and was authorized to act at the accident scene, and that he, therefore, owed a legal duty to Mr. Duncan, liability should be determined as it would be in any negligence case. *Id.*

Finally, because it was unnecessary to consider Sheriff Millward's comments contained in appellant's brief in resolving this appeal, we decline to address appellees' argument regarding this issue.

### CONCLUSION

We hold that the district court erred in granting summary judgment in favor of the appellees.

Reversed and remanded.