Joseph NEWBERRY, Appellant
(Plaintiff),

v.

BOARD OF COUNTY COMMISSIONERS
OF FREMONT COUNTY, Wyoming,
Appellee (Defendant).

No. 95–199.

Supreme Court of Wyoming.

July 8, 1996.

David B. Hooper of Hooper Law Offices, P.C., Riverton, for appellant.

Travis W. Moffat of Moffat & McKee, P.C., Lander, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

THOMAS, Justice.

The dispositive issue in this case is whether civil liability to Joseph Newberry (Newberry) on the part of Fremont County is controlled by the Wyoming Governmental Claims Act, Wyo. Stat. §§ 1–39–101 through 120 (1988 and Supp.1995), or by a document entitled "Statement of Willingness to Assume Financial Responsibility" furnished to the Interstate Commerce Commission by Fremont County. The document was furnished to comply with Title 16 U.S.C. § 1247(d) (1983), part of the National Trails System Act. The apparent purpose of the pertinent part of this federal legislation is to provide for the utilization of existing railroad rights-of-way as trails in order to "bank" such rights-of-way rather than abandon them. Newberry was seriously injured when he drove his vehicle off a partially washed-out trestle on the railroad right-of-way for which Fremont County had assumed financial responsibility. The trial court entered summary judgment in favor of Fremont County on the premise of governmental immunity. We hold the liability of Fremont County is controlled by the Wyoming Governmental Claims Act and, pursuant to the statute, Fremont County enjoys immunity. We affirm the order granting summary judgment entered in the trial court.

Newberry in his Appellant's Brief presents two issues for review:

1. Whether as a matter of law it was error for the District Court to grant summary judgment to Defendant, Board of County Commissioners of Fremont County, Wyoming (County).

2. Whether it was error for the District Court to grant summary judgment to Defendant County because of the existence of one or more genuine issues of material fact.

The Board of County Commissioners of Fremont County frames the issues in its Brief of Appellee as follows:

I. Did the Trial Court err when it concluded that there are no genuine issues of material fact in dispute, and FREMONT COUNTY is entitled to a Judgment as a matter of law as immunity was available to it under Section 1–39–120 of the Wyoming Governmental Claims Act?

II. Can the granting of the Summary Judgment in favor of FREMONT COUNTY be sustained on other legal grounds appearing in the record, specifically the application of Wyoming's Recreational Use Act?

For many years, the Chicago & Northwest Railroad owned and operated a railroad line between Riverton and Bonneville in Fremont County, Wyoming. During the 1980s, operation of this line was discontinued, and the

Chicago & Northwest Railroad sold it to Bad Water Line. Subsequently, Bad Water Line and Bonneville Transloaders, Inc. submitted a proposal to Fremont County, pursuant to which it had the "first option" to purchase the railroad line for one dollar. The rails and ties were removed from the line, but the trestles, bridges, and ballast remained in place. In 1991, Fremont County accepted a quitclaim deed from the owners of the Bad Water Line with the intent of including the right-of-way in the Wyoming Heritage Trail project. An inspection of the right-of-way from Riverton to Shoshoni was conducted in 1991 by the Fremont County Commissioners, who observed no damage to the trestle, which is the subject of this action.

■ The acquisition of the railroad right-of-way was accomplished pursuant to the National Trails System Act, 16 U.S.C. §§ 1241 to –51, adopted by Congress in 1968. The act establishes a program that preserves a railroad right-of-way no longer being used as an operating railroad line to avoid abandonment and retain the right-of-way for possible use as an operational railroad line in the future. At the same time, the right-of-way is used as a recreational trail system. 16 U.S.C. § 1247(d). In the vernacular, this feature of the act is known as the "Rails to Trails" program. The acquisition by Fremont County was designed to comply with the federal legislation.

In furtherance of this purpose, Fremont County executed a Statement of Willingness to Assume Financial Responsibility (Statement). That document was a part of an Interstate Commerce Commission proceeding identified as ICC Dkt. AB346 (Sub-no. 1X), entitled "Bad Water Line—Exemption—Shoshoni to Riverton, Wyoming," and states, in pertinent part:

### STATEMENT OF WILLINGNESS TO ASSUME FINANCIAL RESPONSIBILITY

In order to establish interim trail use and rail banking under section 8(d) of the National Trails System Act. 16 U.S.C. § 1247(d), and 49 C.F.R. § 1152.29, **Fremont County (Wyoming) is willing to assume full responsibility for manage-** **ment of, for any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability),** and for the payment of any and all taxes that may be levied or assessed against the right-of-way owned by Bad Water Line and operated by Bad Water Line. (Emphasis added.)

It is consistent with the language of the National Trails System Act which permits such a transfer to a public entity and provides for liability for transfer of rights-of-way in this language:

If a State, **political subdivision,** or qualified private organization is prepared to **assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use,** and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the [Interstate Commerce] Commission shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

16 U.S.C. § 1247(d) (1983).

On the evening of July 14, 1993, Newberry, accompanied by a friend, went "coon" hunting. They decided to enter the trail and drive on it to Shoshoni. After dark, sometime after 10:00 p.m., Newberry drove onto the trestle that crossed Horse Thief Gulch. A section of the trestle was missing, and the trestle terminated in mid-air. Newberry drove onto the trestle without any knowledge of its condition. The van he was driving fell off the trestle dropping about twenty feet, and he sustained serious injuries.

Newberry proceeded with an action against Fremont County and the county sheriff, pursuant to the Wyoming Governmental Claims Act. In his complaint, Newberry alleged negligence in the operation and maintenance of the railroad right-of-way, which he alleged was a recreation area. The defendants filed motions for summary judgment asserting immunity from liability under

the Wyoming Governmental Claims Act. The district court, in an order entered July 5, 1995, ruled there were no genuine issues of material fact, and granted the motion for summary judgment filed by the sheriff and the motion for summary judgment filed by the Fremont County Commissioners. The thrust of the court's ruling was that immunity was available under WYO. STAT. § 1–39–120 (1988). The court also held that the immunity had not been waived by the Statement and, further, there had been no waiver of immunity by participating in the local government self-insurance program pursuant to WYO. STAT. § "1–42–103(vi)(C)" [§ 1–42–103(e)(vi)(C) ] (1990). Newberry has appealed from the order granting summary judgment to Fremont County.

In this appeal, Newberry's stance is that Fremont County agreed to assume any legal liability arising out of the transfer or use of the right-of-way when it signed the Statement furnished to the Interstate Commerce Commission. He argues any state law to the contrary is preempted by the federal act in this Statement. Furthermore, Newberry contends Fremont County understood it was accepting title to a "recreation area" and immunity from liability was waived pursuant to WYO. STAT. § 1–39–106. He also seeks to avoid summary judgment by asserting there is a genuine issue of material fact whether the trestle is to be considered a "recreation area," foreclosing Fremont County from the defense of immunity or a "bridge," which would afford the defense of immunity, as the district court ruled.

In addressing the critical issue, Fremont County argues this action is controlled by the Wyoming Governmental Claims Act. Fremont County's position is that the causative factor relates to the maintenance of a bridge, and it is entitled to immunity according to WYO. STAT. § 1–39–120. Fremont County points to the language in the Statement that acknowledges the potential of immunity of the user and then requires only indemnification of the railroad. Fremont County argues that, properly construed, the document does not waive immunity, nor does it preempt the provisions of the Wyoming Governmental Claims Act.

■■■ Our review of this summary judgment granted under WYO. R. CIV. P. 56(c) follows this standard:

> Summary judgment is appropriate when no genuine issue of material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Sandstrom v. Sandstrom*, 884 P.2d 968, 971 (Wyo.1994).
>
> \* \* \* \* \* \*
>
> We review the grant of summary judgment without according any deference to the district court's decisions on issues of law. *Halpern v. Wheeldon*, 890 P.2d 562, 564 (Wyo.1995); *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1325 (Wyo.1995). Summary judgment is not favored in negligence actions and is subject to more exacting scrutiny. *Tidwell*, at 1325 (*citing MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo.1990)). However, even in negligence actions, summary judgment may be appropriate, especially if a plaintiff cannot establish the existence of a duty on the part of a defendant. *Tidwell*, at 1325. We will affirm a grant of summary judgment if it can be sustained on any legal ground appearing in the record. *Bidache [Inc. v. Martin*, 899 P.2d 872 (Wyo.1995) ], at 874 (*citing Moncrief v. Louisiana Land & Exploration Co.*, 861 P.2d 516, 523 (Wyo.1993)).

*Duncan v. Town of Jackson*, 903 P.2d 548, 550–551 (Wyo.1995).

We do not reach the question of preemption by federal law in this case because the Statement does not, in fact, impose liability on Fremont County. The National Trails System Act requires the county to assume responsibility for legal liability for use of the right-of-way but, if immunity is available, Fremont County is required only to indemnify the railroad against potential liability. It is clear the Statement recognizes the possibility of immunity from liability and only requires Fremont County to assume responsibility for legal liability, whatever that liability might be. Fremont County's liability for negligence in this instance is not controlled by the requirements of the federal statute or the Statement Fremont County executed.

In this regard, we note that the National Trails System Act authorizes transfer or conveyance to a qualified private organization as well as to a state or a political subdivision. 16 U.S.C. § 1247(d). If this transfer had been to a qualified private organization in Wyoming, the provisions of WYO. STAT. §§ 34–19–101 to –106 (1990) would be the applicable law. In addressing the duty of the landowner, the statute provides:

> Except as specifically recognized by or provided in W.S. 34–19–105, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for recreational purposes.

WYO. STAT. § 34–19–102.

Had a qualified private organization been the transferee of the railroad right-of-way, it would owe no duty to Newberry because of that Wyoming statute. Even, if a qualified private organization had signed a similar statement to that executed by Fremont County, the provisions of the state statute would control to prevent liability.

Fremont County endeavors to invoke WYO. STAT. § 34–19–102 as a defense by citing *Smith v. United States,* 383 F.Supp. 1076 (D.Wyo.1974), *aff'd,* 546 F.2d 872 (10th Cir. 1976). While we recognize we can affirm the trial court on any proper legal ground, we are satisfied we need not address this argument in disposing of the case.

We agree with the trial court that disposition is controlled by the Wyoming Governmental Claims Act. Our statutory provision clearly is one in which immunity is the rule and liability is the exception. *Vigil v. Ruettgers,* 887 P.2d 521 (Wyo.1994); *Hurst v. State,* 698 P.2d 1130 (Wyo.1985). *See Kimbley v. City of Green River,* 663 P.2d 871 (Wyo.1983). The statute provides, in pertinent part:

> (a) A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112.

WYO. STAT. § 1–39–104 (1988).

The exception upon which Newberry relies is found in WYO. STAT. § 1–39–106, waiving immunity for recreation areas:

> A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, **recreation area** or public park. (Emphasis added.)

In ruling in favor of Fremont County, the trial court relied upon the provisions of WYO. STAT. § 1–39–120 (Supp.1995):

> (a) **The liability imposed by W.S. 1–39–106** through 1–39–112 **does not include liability for damages caused by:**
>
> (i) A defect in the plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area;
>
> (ii) **The failure to construct or reconstruct any bridge,** culvert, highway, roadway, street, alley, sidewalk or parking area; or
>
> (iii) **The maintenance, including maintenance to compensate for weather conditions, of any bridge,** culvert, highway, roadway, street, alley, sidewalk or parking area. (Emphasis added.)

We addressed the interplay of these statutory provisions in *DiVenere v. University of Wyoming,* 811 P.2d 273, 275 (Wyo.1991):

> The word "recreation" means, "1 a: the act of recreating or the state of being recreated: * * * diversion, play * * *. b: a means of getting diversion or entertainment * * *." Webster's Third New International Dictionary 1899 (1971). More directly, as used in W.S. 1–39–106, in its adjectival form, "recreation" means: **"equipped so as to provide diversions or amusements * * *."** Id. If a statute employs a term which has a standard meaning, the term is presumably used in its ordinary and usual sense unless another sense is clearly intended. W.S. 8–1–

103(a)(i). Here, the word "recreation" is used in its standard meaning; indeed, we know of no other meaning the word might have. If a statute is clear and unambiguous, we will not resort to rules of statutory construction, and the words will be given their plain and ordinary meaning. Id. We hold that War Memorial Stadium at the University of Wyoming is a recreation area as contemplated by W.S. 1–39–106. Sports facilities are recreation areas. * * * This includes football, * * *. (Emphasis added, citations omitted.)

We went on to hold that the ramp in Memorial Stadium at the University of Wyoming was not a sidewalk subject to the exclusions from waiver of immunity found in WYO. STAT. § 1–39–120. The obvious logic of that opinion, however, is that WYO. STAT. § 1–39–120 would have controlled if the ramp had been a sidewalk.

 In WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2439 (1993), a trestle is described in this way:

A braced framework of timbers, piles, or steelwork usu. of considerable height for carrying a road or railroad over a depression * * *.

A bridge is defined in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 276 (1993) as:

A structure erected over a depression or an obstacle to travel (as a river, chasm, roadway, or railroad) carrying a continuous pathway or roadway (as for pedestrians, automobiles, or trains) * * *.

In *City of Cheyenne v. Huitt*, 844 P.2d 1102, 1104 (Wyo.1993), we articulated our rule of statutory construction when the statute is clear and unambiguous, saying, "we will not resort to rules of statutory construction and the words of the statute will be given their plain and ordinary meaning."

This trestle on the railroad right-of-way is a bridge for purposes of the application of WYO. STAT. § 1–39–120. That statute, we emphasize, provides, in pertinent part:

The liability imposed by W.S. 1–39–106 through 1–39–112 **does not include liability for damages caused by: * * * the failure to construct or reconstruct any bridge, * * *; or the maintenance, including maintenance to compensate for weather conditions, of any bridge * * *.**

Newberry vigorously argues there is a genuine issue of material fact whether the county was negligent in the maintenance of a recreation area that included a bridge or was negligent in the maintenance of a bridge. The question is one of law in light of *DiVenere*. We hold Newberry's accident was attributable to the failure to reconstruct the trestle or properly maintain it. Immunity exists in favor of Fremont County pursuant to WYO. STAT. § 1–39–120. Even though the trestle was part of a recreation area, the waiver of immunity in WYO. STAT. § 1–39–106 is limited by WYO. STAT. § 1–39–120. The district court did not err in ruling on this question of law.

The order granting Fremont County's motion for summary judgment is affirmed.