**KAUTZ, J. dissenting, in which GRAY, J., joins.**

[¶40]   I respectfully dissent.

[¶41]   The question presented to us is "does a law enforcement officer acting within the scope of his or her duties as such owe a duty of care *to the suspect(s)* in a criminal investigation to conduct that investigation in a non-negligent manner?" (emphasis added). Unfortunately, the majority opinion provides no analysis of whether such a duty is owed *to the suspect*.  Applying the analytical framework this Court consistently uses to determine whether a duty exists, *see, e.g., Gates v. Richardson,* 719 P.2d 193, 196 (Wyo. 1986); *Ortega v. Flaim,* 902 P.2d 199, 203, 206 (Wyo. 1995); *Mostert v. CBL & Assocs.,* 741 P.2d 1090, 1094 (Wyo. 1987); *Duncan v. Afton, Inc.,* 991 P.2d 739, 744 (Wyo. 1999); *Andersen v. Two Dot Ranch, Inc.,* 2002 WY 105, ¶ 44, 49 P.3d 1011, 1024 (Wyo. 2002); *Natrona Cnty. v. Blake,* 2003 WY 170, ¶ 6, 81 P.3d 948, 951 (Wyo. 2003), I conclude that an investigating officer does not owe such a duty to a suspect.

[¶42]   Rather than performing a duty analysis, the majority jumps to the conclusion that an investigating officer does owe a duty of care to suspects when conducting investigations. To reach this conclusion without analysis, the majority relies on a generic duty statement found in cases where non-suspects claimed they benefited from a general duty of officers to act reasonably under the circumstances.  By leaping from this generic duty applied to non-suspects to a duty owed to suspects, the majority ignores fundamental tort law which only recognizes a duty in specific instances—applicable here in the context of the recipient or beneficiary of that duty.  The majority avoids applying our duty analysis which, I conclude, dictates against finding a duty.  By implication, the majority opinion concludes that an investigating officer owes a duty to everyone everywhere, without regard to their relationship to the officer or the claimed injury.  And, the majority opinion effectively recognizes a new tort in Wyoming permitting a criminal defendant to sue an investigating officer for simple negligence because a prosecutor filed criminal charges which were later dismissed.  The majority opinion puts Wyoming in a unique position – it appears every other state which has considered whether criminal suspects may sue an investigating officer for negligent investigation has concluded he or she may not.

**Tort Law on Duty**

[¶43]   "The threshold question in a negligence action is whether the defendant owed a legal duty *to the plaintiff*."  57 Am. Jur. 2d *Negligence* § 70 (emphasis added).  This court recognizes the basic negligence principle that duties are understood and applied only in the context of a beneficiary or recipient of the duty.  "The elements that a plaintiff must establish to maintain a negligence action in a court of law are:  (1) that the defendant owed *to the plaintiff* a duty …."  *Keehn v. Town of Torrington*, 834 P.2d 112, 115 (Wyo. 1992) (emphasis added).  "In order to recover in any negligence action, a plaintiff must establish that the defendant owed a duty of care *to him*."  *Duncan v. Town of Jackson*, 903 P.2d 548,

1

551 (Wyo. 1995) (emphasis added). "To establish negligence, [a plaintiff] must prove: (1) the defendant *owed the plaintiff* a duty …." *Cornella v. City of Lander*, 2022 WY 9, ¶ 25, 502 P.3d 381, 387 (Wyo. 2022) (emphasis added) (internal quotation marks and citations omitted).

[¶44] In general, everyone has a basic duty to exercise reasonable care. We have mentioned this general duty as applicable to police officers, as well as others. This basic duty, however, only becomes a legal duty owed to a particular plaintiff when the relationship between the defendant and the plaintiff, and public policy considerations, indicate a legal duty should exist. 57 Am. Jur. 2d *Negligence* § 73. "The existence of a duty turns on the basic nature of the relationship between the parties to the cause of action. Thus, in determining whether a duty exists, the court should examine the relationship between the parties." *Id.,* § 78. Before this case, we have not considered the relationship between an investigating officer and a suspect to determine whether the officer owes this duty to a suspect.

[¶45] To examine the relationship between the investigator and Ms. Palm-Egle, it is necessary to restate the context for the question presented to us: A law enforcement officer investigated an alleged crime and delivered his findings, along with other information, to a prosecuting attorney. During the investigation someone, apparently on behalf of Ms. Palm-Egle, gave the investigator information that he apparently discounted and did not explore further. The prosecuting attorney then filed felony charges against Ms. Palm-Egle. After a circuit court judge found no probable cause[1] to bind those felonies over to district court, Ms. Palm-Egle sued the investigating officer, claiming he was negligent in conducting his investigation, apparently because he did not delve further into the information Ms. Palm-Egle's agent provided. Although the questions certified to us do not specifically list the damages Ms. Palm-Egle claims, it is obvious from her argument that she claims some sort of injury resulting from facing criminal charges.[2] The U.S. District Court submitted its duty question to us in generic terms, rather than in specific terms based on these facts. If we were directly presented with the duty question, it likely would be "did this investigator have a duty to follow up on evidence Ms. Palm-Egle believed was exculpatory before he submitted his information to the prosecutor?" Ideally, the question would have specified the damages Ms. Palm-Egle claims, because determination of whether a duty exists always requires an evaluation of the foreseeability of those damages. Nevertheless, it is possible to answer the more abstract question submitted by the U.S. District Court.

---

[1] The circuit court concluded there was no probable cause "to find that there was intent to possess … marijuana …." However, the crime of possession of a controlled substance is a general intent crime and does not require specific intent to possess.

[2] The majority suggests that other types of damages might result from an improper investigation, such as property damage or personal injury. Such damages would not result from negligent investigation, but instead from duties owed by someone taking possession of property to properly care for it, etc. Such damages are not related to the status of the plaintiff as a suspect or the officer's investigative actions.

[¶46]   The majority opinion never examines the relationship between the investigator, Ms. Palm-Egle, and the charges which were filed to determine if an investigator should owe a duty to Ms. Palm-Egle.  Instead, it relies on general duty of care statements from this Court which mention an officer's general duty to act reasonably.  It asserts "we already recognize a duty owed by law enforcement officers *to citizens*."  However, this Court has never analyzed nor determined that every law enforcement officer owes a general duty to act reasonably in every circumstance to every citizen or to suspects, specifically.  It is not appropriate to conclude from the cases relied on by the majority that the "duty to act as a reasonable peace officer of ordinary prudence under like circumstances" applies beyond the facts of those cases or applies to every potential plaintiff.

[¶47]   In *Cornella*, ¶ 26, 502 P.3d at 387, we recognized the general duty of reasonable care on the part of law enforcement officers.  However, we stated that a duty arises when "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other …."  Inherent in *Cornella* was a consideration of the relationship between the officer and the plaintiffs and the damages they claimed.  Our conclusion in *Cornella,* although implied rather than specifically stated, was that an officer who undertakes to deliver a potentially rabid bat for testing, on behalf of the family exposed to the bat, had a duty to the family to exercise reasonable care in doing so.  The relationship between the plaintiffs and the officer, and the potential consequences of negligently performing that task, were key to our decision.  *Cornella* did not consider whether the officer owed that duty to anyone else, including suspects in criminal investigations.  *Cornella* shows that the duty of reasonable care applies to those specific circumstances, but it has no relationship to the facts here.

[¶48]   Similarly, in *Keehn*, 834 P.2d at 115, we mentioned the general duty of an officer to act reasonably.  However, all our statements about duty in *Keehn* are dicta, as the case was not decided on the basis of duty.  Rather, we found the trial court properly granted summary judgment in favor of the officer because there was no evidence he was negligent.  Nevertheless, when we discussed duty in *Keehn,* we recognized the officer's duty was more specific than a general reasonableness obligation, and that there were specific beneficiaries of his duty to investigate DUI cases.  We said "peace officers have a general duty to apprehend, arrest, and remove drunk drivers from Wyoming's roadways.  This duty emanates from Wyoming's drunk driving law, Wyo. Stat. § 31-5-233 (June 1989).  Section 31-5-233, [was] enacted for the protection of the public at large as well as for the individual inebriate and his/her passengers." *Id.* (citation omitted).  Consistent with standard tort law, we did not simply impose on the officer a general duty of reasonable care applicable to the entire public, but rather we considered the relationship of the parties and identified the beneficiaries of the officer's specific duties.  We must do the same in this case.

[¶49]   In *Duncan,* 903 P.2d 548, we considered a claim by the family of a victim in a car crash.  The family claimed an officer failed to adequately investigate the scene of the crash

3

to determine if the victim was still in the car. Although the Court quoted *Keehn* stating that an officer generally has a duty to act reasonably under the circumstances, that statement was not the basis of the decision. *Id*. at 552. We did not consider whether such a duty might apply to every citizen, or even to the victim of the crash. Rather, we recognized that questions of whether the officer had a legal duty to the victim of that crash remained unanswered and would necessarily be decided later in the trial proceedings. We said "[g]enuine issues of material fact exist, and they include but are not limited to: . . . 3) whether, even if [the officer] was not required to respond to the emergency, once he did respond he owed a legal duty to [the victim] …." *Id.* at 553. *Duncan* did not analyze or establish that an officer owes a duty of reasonableness to every citizen, nor did it consider whether an officer investigating a potential crime owes any duties to a suspect. It did not discuss the relationships between an officer and every citizen, or between an officer and a suspect, to determine if any legal duty exists. Like *Cornella* and *Keehn*, *Duncan* did not determine what, if any, duties apply between an investigating officer and a suspect.

**Duty Factors**

[¶50] Because this Court has never analyzed the relationship between an investigating officer and a suspect to determine what legal duties, if any, apply between them, it is necessary to do so here.

[¶51] In deciding "whether a duty should be imposed based on a particular relationship," this Court considers multiple factors: "(1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved." *Natrona Cnty.*, ¶ 6, 81 P.3d at 951. Analysis of these factors shows a law enforcement officer acting within the scope of his or her duties does not owe a duty of care to a suspect in a criminal investigation to conduct the investigation in a non-negligent manner.

[¶52] The first factor, foreseeability of harm to the plaintiff, "is the most important … and 'is the fulcrum on which duty—its existence or absence—rests.'" *Wilcox v. Sec. State Bank*, 2023 WY 2, ¶ 40, 523 P.3d 277, 287 (Wyo. 2023) (citation omitted). The alleged harm (the filing of criminal charges which are eventually dismissed) to any suspect cannot be a foreseeable result from simple negligence on the part of the investigating officer because the prosecutor alone makes the charging decision. *See Hirsch v. State,* 2006 WY 66, ¶ 11, 135 P.3d 586, 591 (Wyo. 2006) (recognizing that "[t]he prosecutor is vested with the exclusive power to determine who to charge with a crime and with what crime to charge them") (alteration added) (citation omitted).

[¶53]  In addition to the general lack of foreseeability described above, the foreseeability requirement presents two specific problems for Ms. Palm-Egle's claim that she was harmed by the officer's investigation.  First, her claim requires a determination that the prosecutor should not and would not have filed the charges had the officer conducted additional investigation.  If the prosecutor would have filed the charges in any event, Ms. Palm-Egle cannot establish harm from the investigation.  However, no one could foresee whether this prosecutor would or should file charges, with or without any additional investigation.  Prosecutors are not required to have perfect cases before they file charges.  They are not even required to have probable cause, although lack of probable cause can quickly create problems for their case.  The decision on whether to file charges was in the exclusive discretion of this prosecutor, based on whatever factors he found appropriate.

[¶54]  A second specific foreseeability problem that disconnects the officer's investigation from any claimed harm by Ms. Palm-Egle is that there was no foreseeable connection between the officer's investigation and at least some of the charges being dismissed.  The charges were a foreseeable harm to Ms. Palm-Egle _only_ if it was axiomatic that they would be dismissed.  If the charges were not dismissed, Ms. Palm-Egle could not claim to wrongfully have been damaged.  In this case it could not have been foreseeable that the circuit judge would determine there was no probable cause for some of the felony charges, nor that the circuit judge would incorrectly dismiss the possession charge based on intent.

[¶55]  In sum, the kind of damages a charged suspect would claim, based on charges being filed and then dismissed, simply are not a foreseeable result of an investigator's negligent actions.

[¶56]  The second factor, the closeness of the connection between the defendant's conduct and the injury claimed, "is 'a corollary of foreseeability,'" and "considers other contributions to the harm." _Wilcox_, ¶ 43, 523 P.3d at 288 (citations omitted).  Assuming that the filing of charges constitutes harm to a suspect, many other factors may contribute to that action beyond the officer's investigation. The prosecutor decides to file the charges. At some point a judicial officer must determine whether there is probable cause to support felony charges. There is not a close connection between an officer's negligent investigation and a suspect's "damage" from facing criminal charges.

[¶57]  The third factor, the degree of certainty that the plaintiff suffered injury, also weighs against finding a peace officer has a duty to a suspect to conduct an investigation in a "nonnegligent" manner.  The suspect here apparently claims injury from the criminal charges having been filed.  In contrast to the more typical injury cases, where there is a higher degree of certainty that injury resulted from the defendant's actions, a suspect's claim for negligent investigation does not present an obvious physical injury. _See_, _e.g._, _Becker v. Mason_, 2006 WY 143, ¶¶ 1, 4, 145 P.3d 1268, 1269 (Wyo. 2006) (plaintiff sought wrongful death damages after the decedent was killed in a motor vehicle collision with a drunk driver the deputy sheriff failed to stop from driving); _Bd. of Cnty. Comm'rs ex rel._

*Teton Cnty. Sheriff's Dep't v. Bassett*, 8 P.3d 1079, 1082 (Wyo. 2000) (plaintiffs sought damages for injuries suffered in motor vehicle collision partially caused by officers' failure to enforce a roadblock); *Duncan*, 903 P.2d at 550 (plaintiff sought damages for decedent's wrongful death based on law enforcement's alleged negligent motor vehicle accident investigation); *DeWald v. State*, 719 P.2d 643, 645-46 (Wyo. 1986) (plaintiff sought damages for wrongful death of decedent killed in motor vehicle collision caused by law enforcement's negligent high speed chase). Other potential claimed damages, such as emotional distress or attorney fees, are not obviously the result of facing criminal charges and have limited availability in Wyoming.

[¶58]   The fourth factor, the moral blame attached to the defendant's conduct, assesses "whether the defendant is morally culpable before imposing liability." *Larsen v. Banner Health Sys.*, 2003 WY 167, ¶ 30, 81 P.3d 196, 205 (Wyo. 2003). "Moral blame generally results from situations in which the defendant had direct control over establishing and ensuring proper procedures to avoid the harm caused or where the defendant is the party best in the position to prevent the injury." *Moses Inc. v. Moses*, 2022 WY 57, ¶ 39, 509 P.3d 345, 356 (Wyo. 2022) (citations omitted). As with the other factors, the prosecutor has control over the quality of the information used as the basis for criminal charges. The prosecutor, not the investigator, controls the filing of charges. Certainly, an officer who damages a suspect's property, violates constitutional rights, or causes personal injury is morally culpable for those actions because he has primary control over his actions. However, those are not the damages or relationships which are relevant to the question before us. In general, the investigating officer has no control over the charges being filed against a suspect. Even if the officer was negligent, the choice to file the charges rests exclusively with the prosecutor.

[¶59]   The fifth factor, the policy of preventing future harm, weighs against an officer's duty to conduct a "non-negligent" investigation of a suspect. As discussed, a peace officer's investigation does not cause harm to a suspect, i.e., the filing of charges and attendant consequences. The entity with the strongest motivation and ability to prevent harm (if it is harm) from the filing of criminal charges is the prosecuting attorney, not the investigating officer. When a peace officer presents investigatory materials to a prosecutor, the prosecutor has the sole responsibility to assess whether criminal charges are appropriate or whether the law enforcement officer should conduct additional investigation. Once a prosecutor files charges, a judicial officer reviews the charges and supporting affidavits to make a probable-cause determination, and if that judicial officer finds probable cause, the adversarial process commences, affording the defendant additional opportunities to challenge the filing of charges. Our system of criminal justice already has substantial and appropriate procedures to protect against the type of "harm" a criminal suspect would claim as a result of facing charges.

[¶60]   The sixth factor we consider in determining whether there is a legal duty, the burden upon the defendant, considers the negative consequences to the defendant of imposing a

duty in a particular relationship. Recognition of a duty to conduct a "non-negligent" investigation for the benefit of suspects will have substantial negative consequences to law enforcement officers. It will create a new tort in Wyoming – the tort of negligent investigation. It will invite every criminal defendant who is acquitted or has charges dismissed after a preliminary hearing to sue police officers claiming negligent investigation. Officers will be reluctant to investigate, especially in close cases, for fear of being sued. Many courts have recognized that imposing on investigators a duty of care to a suspect impairs vigorous prosecution and has a chilling effect on law enforcement. *See Lahm v. Farrington*, 90 A.3d 620, 624 (N.H. 2014) (stating "police officers' interest in conducting criminal investigations without fear of liability for negligence … weighs heavily against the significant interests of criminal suspects"); *Smith v. State*, 324 N.W.2d 299, 301 (Iowa 1982) ("to assure continued vigorous police work, those charged with that duty [to investigate crime] should not be liable for mere negligence"); *Wimer v. State*, 841 P.2d 453, 455 (Idaho 1992) ("[w]e agree with the policy that to hold investigators liable for their negligent acts would impair vigorous prosecution and have a chilling effect on law enforcement"); *Dever v. Fowler*, 816 P.2d 1237, 1242 (Wash. Ct. App. 1991), *as amended* 824 P.2d 1237, 1238 (Wash. Ct. App. 1992) ("The reason courts have refused to create a cause of action for negligent investigation is that holding investigators liable for their negligent acts would impair vigorous prosecution and have a chilling effect upon law enforcement.")

[¶61]   The seventh factor, the consequences to the community and the court system, "has generally been thought of as weighing the negative aspects of creating a new cause of action." *Larsen v. Banner Health Sys.*, 2003 WY 167, ¶ 32, 81 P.3d 196, 205 (Wyo. 2003). It considers the negative consequences of recognizing a duty not on the officer (sixth factor) but on the court system and the public.

[¶62]   This factor weighs heavily against a legal duty of non-negligent investigation owed by officers to suspects. Recognition of such a duty would not only negatively impact officers in their investigations, but it would also have significant negative consequences on the community and the court system. This duty would invite litigation, impair vigorous prosecution, and have a chilling effect on law enforcement. The Iowa Supreme Court summarized this public policy consideration well: "The public has a vital stake in the active investigation and prosecution of crime. Police officers and other investigative agents must make quick and important decisions as to the course an investigation shall take. Their judgment will not always be right; but to assure continued vigorous police work, those charged with that duty should not be liable for mere negligence." *Smith*, 324 N.W.2d at 301.

[¶63]   An additional negative consequence to the public and the courts from recognition of this new duty and tort is that criminal defendants will be able to circumvent the strict requirements of a malicious prosecution claim. Until now a criminal defendant who

wished to sue an investigating officer or the prosecutor (effectively suing the state) was required to bring a malicious prosecution claim or a claim under 42 U.S.C. § 1983. These claims provide appropriate avenues for recovery by a suspect who alleges to have been improperly charged or investigated, while protecting the public's interest in vigorous investigation and prosecution of crimes. We recognized in *Cates v. Eddy*, 669 P.2d 912, 918 (Wyo. 1983), that allowing actions for malicious prosecution could have a chilling effect on law enforcement but concluded that the heightened requirements of a malicious prosecution claim – malice and lack of probable cause – sufficiently balanced the interest of the public in having wrongs investigated and prosecuted against the interest of redress for actual wrong and damage. Recognition of a duty on peace officers to conduct a non-negligent investigation for the benefit of suspects abandons that balance, at the expense of the public interest. Criminal defendants who have a charge dismissed or are acquitted would entirely avoid well-reasoned requirements for a malicious prosecution by claiming an officer acted "unreasonably."

[¶64]  The courts and the public will encounter practical difficulties as a result of the majority decision—additional negatives related to the seventh factor. The first of these difficulties results from the majority's conclusion that police officers always owe a duty of reasonableness to everyone, without regard to the relationship of the parties or the foreseeability of the injury. If that is true, then an officer's duty in investigating a crime benefits anyone and everyone. Anyone and everyone, even those remote to the case, could sue the officer, claiming the investigation somehow harmed them. Employers of suspects could sue police officers, claiming a negligent investigation of an employee resulted in criminal charges and the employer lost money due to the employee's absence. Unpaid creditors of a suspect could sue police officers, claiming negligence in investigation resulted in the suspect's failure to pay an obligation. Before this decision, claims of this sort would be dismissed at the outset, because the relationship between the investigating officer and the plaintiff did not create the existence of a duty owed to the plaintiff. Now, because the majority declares an officer has a duty to everyone without regard to relationship, the viability of remote claims like these will not be tested as a question of duty—a matter of law—but as a factual question of causation.

[¶65]  Another practical difficulty resulting from this new tort of negligent investigation is that prosecutors will be called to court to explain their charging decisions. Juries will be required to allocate fault between investigating officers and prosecutors for the charges which were filed. It is difficult to imagine how a jury will be instructed to determine the percentage of "fault," if any, which is allocated to the investigating officer and the percentage which is allocated to the prosecutor who could have or should have reviewed the officer's work more carefully.[3]  Prosecutors, who should have complete discretion as to charging decisions, will no longer enjoy that status.

---

[3] The jury will also be required to allocate the percentage of fault applicable to the plaintiff.

[¶66]  As we have no information about the availability of insurance to cover the tort of negligent investigation resulting in wrongful criminal charges, we cannot consider the eighth factor in our duty analysis.

[¶67]  An analysis of the factors used to determine whether a duty applies to a particular relationship leads to only one conclusion – Wyoming should not recognize a legal duty owed by a law enforcement officer to suspects to conduct an investigation in a non-negligent manner.  Had the majority engaged in such an analysis, it would have reached the same conclusion.

## CONCLUSION

[¶68]  I would answer "No" to the question presented to us:  "Does a law enforcement officer acting within the scope of his or her duties as such owe a duty of care *to the suspect(s)* in a criminal investigation to conduct that investigation in a non-negligent manner?"