# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 31

**OCTOBER TERM, A.D. 2023**

March 26, 2024

DEBORAH PALM-EGLE,

Appellant
(Plaintiff),

v.

JON BRIGGS, individually; and WYOMING
DIVISION OF CRIMINAL
INVESTIGATION,

Appellees
(Defendants).

S-23-0100

*W.R.A.P. 11 Certified Question*
*from the United States District Court for the District of Wyoming*
**The Honorable Scott W. Skavdahl, Judge**

*Representing Appellant:*
　　Gary L. Shockey, Gary L. Shockey, PC, Casper, Wyoming.

*Representing Appellee:*
　　Bridget L. Hill, Attorney General; Mark A. Klaassen, Deputy Attorney General;
　　Debra Hulett, Senior Assistant Attorney General. Argument by Ms. Hulett.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*BOOMGAARDEN, J., delivers the opinion of the Court; KAUTZ, J., files a dissenting opinion in which Gray, J., joins.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    The United States District Court for the District of Wyoming certified two questions to us regarding the duty of care owed by law enforcement officers to suspects when conducting an investigation.  We conclude, consistent with our precedent, that law enforcement officers acting within the scope of their duties owe a common law duty to the suspect in that investigation to investigate as reasonable peace officers of ordinary prudence under like circumstances, and that such officers are entitled to assert qualified immunity.

*ISSUE*

[¶2]    We agreed to answer two certified questions pursuant to W.R.A.P. 11:

1.  Does a law enforcement officer acting within the scope of his or her duties as such owe a duty of care to the suspect(s) in a criminal investigation to conduct that investigation in a non-negligent manner?

2.  If the answer to the first question is yes, is the law enforcement officer entitled to assert qualified immunity under Wyoming law?

*FACTS*

[¶3]    When answering certified questions of law through W.R.A.P. 11, we rely upon the facts presented by the certifying court. *Miech v. Sheridan Cnty.*, 2002 WY 178, ¶ 2, 59 P.3d 143, 144 (Wyo. 2002) (citing *Kaycee Land & Livestock v. Flahive*, 2002 WY 73, ¶ 3, 46 P.3d 323, ¶ 3 (Wyo. 2002)).  Our answer to certified questions is not dependent on factfinding. *Skoric v. Park Cnty. Circuit Ct.*, 2023 WY 59A, ¶ 3, 532 P.3d 667, 668 (Wyo. 2023); *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 812 (Wyo. 1992).  As such, we summarize the facts the federal district court provided us as context for our analysis.

[¶4]    In August 2019, Wyoming Department of Criminal Investigation Task Force Officer John Briggs received a tip about a suspected marijuana growing operation near Albin, Wyoming.  Deborah Palm-Egle lives on that property, and she owns shares in the company that owns the property.  Officer Briggs and another law enforcement officer went onto the property on November 1, 2019 to try to talk to someone but no one was home.  They observed a barn and a greenhouse on the property.  A window on the barn was broken, and Officer Briggs observed and photographed a green leafy substance hanging inside the barn.  Officer Briggs returned to his office and began drafting an affidavit to support a search warrant for certain items and persons at the Palm-Egle property.  He also called the

1

Wyoming Department of Agriculture to determine whether it had issued any licenses to grow hemp in Wyoming. The agency informed Officer Briggs it had not and there was a moratorium in effect for hemp cultivation in Wyoming. Officer Briggs then requested a search warrant, which a circuit judge issued.

[¶5]   On the morning of November 4, 2019, Officer Briggs and other law enforcement officers executed the warrant and seized approximately 327,600 grams of plant material from the barn. Two individuals were at the Palm-Egle property when law enforcement arrived. During the search, one of those individuals provided two laboratory-issued certificates of analysis, prepared for the High Altitude Hemp Company and dated September 12, 2019, which showed that two plant samples were tested and had a Total Delta-9 tetrahydrocannabinol (THC) level of 0.0 percent.[1] Law enforcement notified the Wyoming Crime Lab of the two certificates and provided the certificates to Officer Briggs.

[¶6]   On November 12, 2019, law enforcement sent ten samples of the seized plant material to a lab for testing. In February 2020, the lab provided the test results to law enforcement. Those results showed a Total Delta-9 THC level slightly more than 0.3% in nine of the ten samples—the statutory threshold for the plant material to be considered marijuana instead of hemp.[2] In April 2020, the State filed an information alleging four marijuana-related offenses: three felonies and one misdemeanor. The Information was accompanied by an affidavit of probable cause, prepared by Officer Briggs, which identified the nine test results dated in February but did not mention the two certificates of analysis provided to law enforcement during the search.

[¶7]   A probable cause hearing occurred on August 6, 2020. The presiding circuit court judge declined to bind over the three felony offenses, noting that Ms. Palm-Egle had been held out as an expert in hemp, was instrumental in passing legislation legalizing hemp in Wyoming, and that the low levels of THC in the plant material—close to 0.3 percent—reflected an intent to produce hemp. The circuit court found no probable cause for the intent elements of the charged offenses, declined to bind the matter over to district court, and dismissed all counts.

[¶8]   In April 2022, Ms. Palm-Egle filed a civil action in state district court against Officer Briggs, the Department of Criminal Investigation, and several other parties. Ms. Palm-Egle alleged violations of her constitutional rights pursuant to 42 U.S.C. § 1983, and a

---

[1] The statement of facts provided does not state whether the property searched was owned by the High Altitude Hemp Company.

[2] Wyo. Stat. Ann. § 35-7-1063 excludes possession, use, production, processing, and testing hemp from the Wyoming Controlled Substances Act and defines hemp as "all parts, seeds and varieties of the plant cannabis sativa l., . . . with a trans-delta 9-tetrahydrocannabinol (THC) concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis." *See also* Wyo. Stat. Ann. § 11-51-101(a)(iii) (applying the same threshold THC concentration for hemp in the agricultural licensing statutes).

2

variety of tort claims.[3]  Defendants timely removed the case to federal district court and then moved to dismiss.  The federal district court dismissed several of the claims and parties.  The remaining claims proceeded to summary judgment.

[¶9]    At summary judgment, the federal district court withheld ruling on Ms. Palm-Egle's state law negligence claims, "finding the existence of a legal duty of law enforcement officers to conduct criminal investigations in a non-negligent manner is both an unsettled question of Wyoming state law and potentially dispositive of Palm-Egle's negligence claim."  According to the district court, this "lawsuit arises out of the events and circumstances surrounding Briggs' investigation" and Ms. Palm-Egle alleged several flaws in Officer Briggs's investigation that could amount to a breach of duty.  One of the facts presented to the district court included an admission by Officer Briggs that he "could have investigated further and developed more evidence that [the crop] was being grown as hemp and not as marijuana."  We are not, however, provided with the Complaint or other record materials which may articulate the alleged negligence and Ms. Palm-Egle's injuries.  Nor did either party supplement the record pursuant to W.R.A.P 11.

[¶10] Certification to this Court followed the summary judgment hearing, with the certified issues raised sua sponte by the federal district court.

## STANDARD OF REVIEW

[¶11]   Certified questions are questions of law reviewed de novo.  *State v. Mares*, 2014 WY 126, ¶ 10, 335 P.3d 487, 493 (Wyo. 2014) (citing *Smith v. State*, 2013 WY 123, ¶ 9, 311 P.3d 132, 135 (Wyo. 2013)).

> Certified questions are governed by W.R.A.P. 11.  When there is no controlling precedent to a question of law, Rule 11.01 allows this Court to answer pure questions of law "'which may be determinative of the cause' pending in the certifying court."  The role of this Court in answering a certified question does not include fact finding.  Certainty of facts is not required to answer a pure question of law.

*Sinclair Wyo. Ref. Co. v. Infrassure, Ltd.*, 2021 WY 65, ¶ 10, 486 P.3d 990, 994 (Wyo. 2021) (citations omitted).

---

[3] The statement of facts provided to us does not state whether the tort claims were filed through the Wyoming Governmental Claims Act.  We note that Act is the exclusive vehicle for civil remedies against state agencies and peace officers.  *See generally* Wyo. Stat. Ann. §§ 1-39-101 to -120 (2023).  No procedural defects related to that Act are identified in the certifying court's statement of facts.

## DISCUSSION

### I. Law enforcement officers owe a duty of care to criminal suspects to investigate as reasonable peace officers of ordinary prudence under like circumstances.

[¶12] The first question is posed to us as one sounding in traditional negligence, as "potentially dispositive of Palm-Egle's negligence claim." To maintain a negligence claim, a plaintiff must prove (1) the defendant had a duty of care to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the defendant's breach of duty caused that injury or loss. *E.g.*, *Anderson v. Two Dot Ranch, Inc.*, 2002 WY 105, ¶ 11, 49 P.3d 1011, 1014 (Wyo. 2002) (citation omitted). Whether a duty exists is a question of law for the court to decide. *Id.* If there is no duty, the claim of negligence cannot survive. *Id.*

[¶13] We have long held that law enforcement officers, acting within the scope of their duties, have a common law duty to act as reasonable peace officers of ordinary prudence under like circumstances. We reiterated this rule in the recent case of *Cornella v. City of Lander*, 2022 WY 9, ¶ 27, 502 P.3d 381, 387 (Wyo. 2022). In that case, a mother found a live bat in her son's room and called animal control, which was a division of the city's police department. *Id.* at ¶ 3, 381 P.3d at 383. The city's animal control officers, who were also peace officers, collected the bat but lost it during transport and could not test it for rabies. *Id.* The family was advised to get rabies vaccines as a precautionary measure, and their resulting medical bills totaled more than $80,000. *Id.* at ¶¶ 4–5. The family filed a negligence claim against the city and its animal control officers through the Wyoming Governmental Claims Act. *Id.* at ¶ 1, 381 P.3d at 382. The trial court dismissed the claims at summary judgment, but we reversed and remanded. *Id.* In our discussion of the trial court's errors related to duty in the tort of negligence, we stated:

> we have long held that "peace officers acting within the scope of their duties have a common law duty to act as reasonable peace officers of ordinary prudence under like circumstances." *Duncan* [*v. Town of Jackson*], 903 P.2d [548,] 552 [(Wyo. 1995)] (applying the reasonable peace officer standard to define the duty owed by an officer in a § 1-39-112 action alleging negligence); *see Becker* [*v. Mason*], [2006 WY 143,] ¶¶ 12–14, 15, 145 P.3d [1268,] 1272–73 [(Wyo. 2006)] (using the reasonable peace officer standard as the duty owed by officers in a § 1-39-112 action alleging negligence, and collecting cases in which we concluded that peace officers have a duty to act reasonably under the circumstances); *see also Bassett v. Lamantia*, 2018 MT 119, ¶ 30, 391 Mont. 309, 324, 417 P.3d 299, 311 ("Accordingly, Lamantia owed Bassett a duty to exercise the care that a reasonable officer with similar

4

skill, training, and experience would under the same or similar circumstances."); *Mancini v. City of Tacoma*, 196 Wash.2d 864, ¶ 49, 479 P.3d 656, 668 ([Wash.] 2021) ("[P]olice, just like other people, must exercise ordinary reasonable care[.]").

*Id*. at ¶ 27, 502 P.3d at 387.

[¶14]  We evaluated this same common law duty in the context of a law enforcement investigation in *Keehn v. Town of Torrington*, 834 P.2d 112 (Wyo. 1992).  In that case, a law enforcement officer initiated a traffic stop after observing a burned-out headlight on a vehicle.  *Id*. at 113.  The officer noticed a smell of alcohol during the stop but determined, based on his observation of the driver's hand–eye coordination, speech, and demeanor, that no field sobriety tests were warranted.  *Id*.  Two hours later, the driver crossed the center line of the pavement into incoming traffic and was involved in a head-on collision, resulting in three fatalities.  *Id*. at 114.  The driver's blood alcohol concentration was 0.13 percent. *Id*.  Plaintiffs brought a wrongful death action, alleging the peace officer was negligent when he performed informal field sobriety tests but did not perform formal field sobriety tests and then arrest the driver for driving under the influence.  *Id*. at 114–15.

[¶15]  We expressly declined the opportunity presented in *Kheen* to define "the nature and extent of a peace officer's duty to investigate" and instead resorted to "traditional tort principles."  *Id*. at 115–16.  Applying those traditional principles, we held "a peace officer's duty to investigate a potential DWUI violation during an unrelated traffic stop is dictated by what a reasonable peace officer of ordinary prudence would do under like circumstances."  *Id*. at 116.  Having defined the duty, we evaluated whether that duty was breached by evaluating both the "legal and factual realities inherent in the field of law enforcement."  *Id*. at 116–17.  The legal realities included the Fourth Amendment restrictions against conducting a warrantless search without probable cause, the restriction against investigatory detentions without reasonable suspicion, and the elements of the applicable drunk driving offense.  *Id*.  Evaluating those legal principles in conjunction with the facts available to the law enforcement officer at the time of the investigation, we concluded the duty was not breached.  *Id*. at 117–18.

[¶16]  In *Duncan v. Town of Jackson*, we stated the same general duty in the context of an investigation when an off-duty peace officer arrived at the scene of a truck that drove off the road and down into an embankment.  903 P.2d 548, 550 (Wyo. 1995).  The officer did not go to the vehicle to investigate for occupants, and the next morning the driver of the truck was found dead in the driver's seat.  *Id*.  We again recognized the general duty of law enforcement to act as a reasonable peace officer of ordinary prudence would act under like circumstances.  *Id*. at 552.  We remanded the matter back to the trial court, finding the trial court erred at summary judgment when it concluded the off-duty officer was not acting within the scope of his duties.  *Id*. at 554.

5

## A. Fidelity to existing precedent is warranted.

[¶17]   Officer Briggs invites us to evaluate whether he owed a duty during his investigation by applying the eight-factor test[4] we apply when evaluating whether to recognize a new duty—as a new tort entirely or a new duty based on a particular relationship.  *See Gates*, 719 P.2d at 196 (applying this factor test to determine whether to recognize the new tort of negligent infliction of emotional distress); *Wilcox v. Security State Bank*, 2023 WY 2, ¶ 39, 523 P.3d 277, 287 (Wyo. 2023) (evaluating whether to recognize a new tort of negligent advising); *Duncan v. Afton, Inc.*, 991 P.2d 739, 744 (Wyo. 1999) (applying the eight-factor test to determine "whether a duty should be imposed based on a particular relationship").

[¶18]   We decline Officer Briggs's invitation for three reasons.  First, the federal district court asked us to evaluate duty in the context of a traditional negligence claim, noting in its certification order that our opinion would be "potentially dispositive of Palm-Egle's negligence claim."  Congruently, we have been reticent to recognize new duties and their associated causes of action "without a proper record and insightful analysis of whether conditions in Wyoming warrant a change."  *Wilcox*, 2023 WY 2, ¶ 49, 523 P.3d at 289 (citing *Ortega v. Flaim*, 902 P.2d 199, 204 (Wyo. 1995)).

[¶19]   As noted, the record before us is sparse.  Equally important, we consistently have grounded the duty of law enforcement in the actionable tort of negligence, rather than parsing, or splitting, the scope of an officer's duties into multiple actionable negligence claims, each with its own common law duty analysis.  *Cornella*, 2022 WY 9, ¶ 24, 502 P.3d at 386–87 (rejecting the municipality's argument the plaintiffs' negligence claim must fail because Wyoming's Governmental Claims Act did not recognize the specific torts of negligent transportation and negligent failure to train); *Keehn*, 834 P.2d at 114 (characterizing the question before us as one sounding in negligence, a traditional tort concept, not the adoption of a new tort for negligent investigation); *see Becker*, 2006 WY 143, ¶¶ 13–15, 145 P.3d at 1273 (declining to limit a negligence claim to a specific duty and concluding, under the general duty to act as a reasonably prudent peace officer, a negligent investigation allegation could survive a motion to dismiss).  *Cf. Nakamoto v.*

---

[4] The eight factors are:

> (1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

*Natrona Cnty. v. Blake*, 2003 WY 170, ¶ 6, 81 P.3d 948, 951 (Wyo. 2003) (citations omitted); *Gates v. Richardson*, 719 P.2d 193, 196 (Wyo. 1986) (quoting *Tarasoff v. Regents of Univ. of Cal.*, 551 P.2d 334, 342 (Cal. 1976)).

6

*Kawauchi*, 418 P.3d 600, 616 (Haw. 2018) (stating "[a] negligent investigation claim is a common law tort action for negligence" in a case involving private investigators). The record and conditions presented here do not warrant any change from our usual course.

[¶20]   Second, the eight-factor test applies when we evaluate whether to recognize a <u>new</u> duty based on a particular relationship. *E.g.*, *Anderson*, 2002 WY 105, ¶ 44, 49 P.3d at 1025; *Duncan*, 991 P.2d at 744. We already recognize a duty owed by law enforcement officers to citizens. *Cornella*, 2022 WY 9, ¶ 27, 502 P.3d at 387; *Keehn*, 834 P.2d at 116–17. Officer Briggs suggests that because Ms. Palm-Egle was a criminal suspect subject to investigation our analysis should be different. We disagree. Accused are presumed innocent until proven guilty. *E.g.*, *Watts v. State*, 2016 WY 40, ¶ 11, 370 P.3d 104, 107 (Wyo. 2016) (discussing *Martinez v. Court of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 162, 120 S. Ct. 684, 691, 145 L. Ed. 2d 597 (2000)). Moreover, as explained more fully below, to the extent other jurisdictions have applied the public duty rule to afford criminal suspects lesser protections, i.e., to excuse the recognized duty in the context of criminal investigations, Wyoming has never recognized the public duty doctrine. *Blake*, 2003 WY 170, ¶¶ 12–15, 81 P.3d at 953–56; *see infra* ¶¶ 25–26.

[¶21]   Finally, Officer Briggs's foreseeability analysis, which is a central component of the eight-factor test, is inappropriately narrow.[5] He asserts an officer's conduct during an investigation does not create a foreseeable risk of harm to a suspect because the charging decision is made by a different person (the prosecutor) and other procedural safeguards exist in the criminal justice system such as the requirement for probable cause to support an arrest warrant or summons and the availability of a preliminary hearing once charges are filed. This argument erroneously presumes the only alleged injury a plaintiff could suffer as the result of an officer's conduct during an investigation stems from an improper charging decision or arrest.[6] Even if the record showed that to be the case here, "in deciding whether to adopt a particular tort duty, a court's focus must be much broader than just the case at hand." *Borns ex rel. Gannon v. Voss*, 2003 WY 74, ¶ 31, 70 P.3d 262, 273 (Wyo. 2003) (citations omitted).

[¶22]   Damages resulting from an improper charging decision are just one potential result of a negligent investigation. *E.g.*, *Dever v. Fowler*, 816 P.2d 1237 (Wash. Ct. App. 1991) (seeking damages through civil claims for malicious prosecution, civil rights violations, and negligent investigation after being acquitted for arson); *Sterling v. Commonwealth*, No. CIV.A. 00-0168B, 2000 WL 1675599, at *2 (Mass. Sup. Ct. Aug. 1, 2000) (seeking

---

[5] Of the eight "new duty" factors, foreseeability is "the fulcrum on which duty—its existence or absence—rests." *Wilcox*, 2023 WY 2, ¶ 40, 523 P.3d at 287 (citation omitted). "Foreseeability establishes a 'zone of risk,' which is to say that it forms a basis for assessing whether the conduct creates a generalized and foreseeable risk of harming others." *Id.*

[6] Officer Briggs also mentions the possible loss of liberty related to an arrest and the availability of a different tort claim for that—false arrest. This substantive argument and body of law is inapposite; Ms. Palm-Egle was never arrested.

7

personal injury and emotional distress damages after being arrested as the wrong suspects). Other types of injuries are also foreseeable, as reflected in the breadth of cases attempting to assert this type of negligence claim against law enforcement officers. For example, personal and real property might be damaged. *Mancini v. City of Tacoma* (*Mancini III*), 479 P.3d 656, 664–66 (Wash. 2021) (discussing past cases related to property damage caused by law enforcement during execution of warrants); *Onderdonk v. State*, 648 N.Y.S.2d 214 (N.Y. Ct. Claims 1996) (alleging real and personal property damage after execution of a no-knock warrant, damage to reputation, decrease in property value, and emotional injuries). Personal injury may arise unrelated to an arrest as in *Payne v. State*, No. NNH CV09 5029895 S, 2012 WL 527673, at *2 (Conn. Sup. Ct. Jan. 31, 2012) (claiming "the actions of the police officers caused personal injuries to him before he was able to convince them that he was not [the suspect named in a warrant]"). The alleged injury could also include spoliation of evidence during an investigation. *Han-Noggle v. City of Albuquerque*, No. A-1-CA-35989, 2019 WL 5096073 (N.M. Ct. App. Sept. 10, 2019). Indeed, some courts that bar negligent investigation claims limit that bar to claims related to an arrest but allow negligent investigation claims outside the context of arrest to proceed. *Ferreira v. City of Binghamton*, 975 F.3d 255, 275–76 (2d Cir. 2020).

[¶23] This record and the necessary consideration of cases beyond this one, *Voss*, 2003 WY 74, ¶ 31, 70 P.3d at 273, support our continued fidelity to existing precedent which describes the common law duty owed by law enforcement in general, more traditional negligence terms. Stated differently, because we do not have the benefit of the complaint or other record materials that describe the nature of the injuries Ms. Palm-Egle asserted, or whether her alleged injuries arose solely from the prosecutor's charging decision as Officer Briggs suggests, we should adhere to the workable contours of the common law duty with which we are familiar and regularly employ—Officer Briggs had a duty to investigate as a reasonable peace officer of ordinary prudence under like circumstances. Notably, the circumstances inherent to the investigation of someone suspected of criminal activity will factor into the breach of duty analysis as in *Kheen*. 834 P.2d at 116–18 (concluding law enforcement did not breach this duty based on the facts available to the law enforcement officer during the investigation and the legal principles and elements of the suspected offense applicable to that investigation).

8

**B. Precedent from other jurisdictions does not support departure from existing Wyoming law.**

[¶24]   We understand other jurisdictions have declined to recognize claims for negligent investigation of a crime.[7]  *Waskey v. Municipality of Anchorage*, 909 P.2d 342, 344–45 (Alaska 1996) (citing other jurisdictions); *Smith v. State*, 324 N.W.2d 299, 300 (Iowa 1982) (citing other jurisdictions).  A careful look at that precedent, however, reflects disparate bases that deviate from Wyoming law.

[¶25]   Many of those cases are grounded in the public duty doctrine.  In South Carolina, for example, there is no duty to non-negligently investigate because law enforcement owes its duty to the general public to identify criminal activity, not to the complaining suspect. *Turner v. Taylor*, C.A. No. 7:09-cv-02858-JMC, 2011 WL 3794086, at *9 (D.S.C. Aug 25, 2011).  Michigan also relies on the public duty rule to shield against negligent investigation claims.  *Flones v. Dalman*, 502 N.W.2d 725, 729 (Mich. Ct. App. 1993).  Florida courts, too, have "recognized that the negligent conduct of police investigations does not give rise to a cause of action because the duty to protect citizens and enforce the law is one owed generally to the public." *Pritchett v. City of Homestead*, 855 So. 2d 1164, 1165 (Fla. Dist. Ct. App. 2003).  Montana similarly limits liability for negligence through the public duty rule—"In most instances involving law enforcement, the alleged duty breached is the duty to protect and preserve the peace.  The public-duty doctrine applies in those cases and provides that an officer does not owe a plaintiff a legal duty absent a special relationship." *Bassett*, 417 P.3d at 307; *see also Cope v. Utah Valley State Coll.*, 342 P.3d 243, 253–54 (Utah 2014).

[¶26]   We expressly rejected the public duty rule after examining it in some depth in *Blake*, 2003 WY 170, 81 P.3d 948, and in *DeWald v. State*, 719 P.2d 643 (Wyo. 1986).  The public duty rule was "in essence a form of sovereign immunity and viable when sovereign immunity was the rule." *Blake*, 2003 WY 170, ¶ 12, 81 P.3d at 954.  The legislature has abolished sovereign immunity in this area.  "The public duty only rule, if it ever was recognized in Wyoming, is no longer viable." *DeWald*, 719 P.2d at 653.  In *Blake*, we affirmed the public duty rule has never been a part of Wyoming's jurisprudence.  2003 WY

---

[7] We also note some jurisdictions have backed away from earlier precedent that rejected a duty by law enforcement during an investigation. *See Mancini III*, 479 P.3d at 664 (affirmatively recognizing a general duty by law enforcement during investigations stating "[a]t common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others.  This duty applies in the context of law enforcement and encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance" (quoting *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608 (Wash. 2019)); *Ferreira*, 975 F.3d at 275–76 (concluding New York's prohibition against negligent investigation claims is limited to claims challenging the validity of an arrest); *see also Inman v. City of Whiteville*, 763 S.E.2d 332, 335–36 (N. C. Ct. App. 2014)  (discussing *Strickland v. Univ. of N. C. at Wilmington*, 712 S.E.2d 888 (N.C. 2011) and explaining "that the duty of a law enforcement officer 'not to negligently provide false and misleading information during a criminal investigation' did not 'resemble the types of duties to the general public for which the public duty doctrine normally precludes liability'").

170, ¶ 12, 81 P.3d at 953 ("We have found no precedents of this Court that specifically adopted the public duty rule or even discuss its application in a general sense."). Rather, the modern trend is towards liability. *Id.* (quoting *Schear v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.,* 687 P.2d 728, 731 (N.M. 1984)). "The [public duty] concept that a governmental entity may have a duty to the public in general but no special duty to individual citizens is no longer viable." *Soles v. State*, 809 P.2d 772, 774 (Wyo. 1991). We simply do not align with those jurisdictions that reject any law enforcement duty to non-negligently investigate based on the public duty rule.

[¶27] Other jurisdictions widely cite California's statute-based reasoning in *Johnson v. City of Pacifica*, 4 Cal. App.3d 82, 84 Cal. Rptr. 246 (Cal. Ct. App. 1970), as a basis to deny claims for negligent law enforcement investigation. *E.g.*, *Goldyn v. Clark Cnty.*, No. 2:06-CV-0950-RCJ-RJJ, 2007 WL 2592797, at *8 (D. Nev. Aug. 31, 2007); *Waskey*, 909 P.2d at 344–45; *Smith*, 324 N.W.2d at 300. Notably, however, the *Johnson* decision is firmly rooted in the language of California's governmental claims act, which expressly extends immunity to law enforcement during investigations. *Johnson*, 4 Cal. App.3d at 84–86. Wyoming law enforcement officers enjoy no such immunity. To the contrary, without exclusion, the Wyoming Government Claims Act deems governmental entities "liable for damages resulting from tortious conduct of peace officers acting within the scope of their duties." Wyo. Stat. Ann. § 1-39-112; *see also* Wyo. Stat. Ann. § 1-39-120 (identifying one exclusion for improper seizure during civil forfeiture actions).

[¶28] Other courts rely on malicious prosecution cases to reject claims for negligent investigation. *See, e.g.*, *Waskey*, 909 P.2d at 344–45 (citing *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643 (Colo. 1954), and *Rodriguez v. Richey*, 556 F.2d 1185 (5th Cir. 1977)); *Goldyn*, 2007 WL 2592797, at *8 (pointing in part to *Direnzio v. United States*, 690 F. Supp. 1149, 1155 (D. Conn. 1988)). But malicious prosecution claims have distinct elements, *see Cates v. Eddy*, 669 P.2d 912, 917 (Wyo. 1983) (stating the six elements for malicious prosecution); *Consumers Filling Station Co. v. Durante*, 333 P.2d 691, 694 (Wyo. 1958) (adopting six elements for civil and criminal malicious prosecution), and do not control here.

[¶29] Yet other jurisdictions dismiss claims for negligent investigation by conflating common law duty and common law immunity. *Jestic v. Long Island Sav. Bank*, 440 N.Y.S.2d 278, 281 (N.Y. App. Div. 1981) ("[P]ublic policy has developed an immunity to protect those who act in a reasonable manner in bringing to justice those they believe are criminals. That immunity cannot be broken down upon a mere allegation of negligence or even gross negligence."); *Bromund v. Holt*, 129 N.W.2d 149, 152 (Wisc. 1964) ("Although there is authority to the contrary, the same immunity is, in general, extended to the police and other law enforcement officers acting within the scope of their duties, with the possible exception of a situation where they themselves initiate the complaint or concoct false evidence.").

[¶30]   The better approach is to treat immunity and the absence of duty as distinct legal concepts.  Dobbs et al., Law of Torts § 252 (2d ed. 2023 update) (discussing the differences between "no duty" rules and immunities, which are often used interchangeably).  As the Florida Supreme Court aptly explained, "[u]nder traditional principles of tort law, the absence of a duty of care between the defendant and the plaintiff results in a lack of liability, not application of immunity from suit." *Wallace v. Dean*, 3 So. 3d 1035, 1044 (Fla. 2009) (citing *Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003)); *see also State ex rel. Dep't of Corr. v. Watts*, 2008 WY 19, ¶ 9, 177 P.3d 793, 796 (Wyo. 2008) ("[Q]ualified immunity provides 'an immunity from suit rather than a mere defense to liability . . . .'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985))).  The existence of a duty is the first element of a negligence claim, without which an actor cannot have committed a tort.  Immunity is different; it shields the tortious actor from an action in the courts, depriving the court of subject matter jurisdiction and barring the litigation on the merits of the tort claim. *Wallace*, 3 So. 3d at 1044–45 (citations omitted).

[¶31]   Recognizing distinctions as in *Blake*, 2003 WY 170, ¶ 12, 81 P.3d at 953 (rejecting the public duty rule), *Watts*, 2008 WY 19, ¶ 9, 177 P.3d at 796 (distinguishing between duty and immunity), and Wyo. Stat. Ann. § 1-39-112 (providing for peace officer liability without exclusion for "tortious conduct"), and otherwise finding no compelling reason to adopt another jurisdiction's policy or reasoning, we answer the first question in the affirmative and shift our focus to the question of qualified immunity.

## II.   *Officer Briggs is entitled to assert qualified immunity.*

[¶32]   The second question the federal district court asks is whether Officer Briggs is entitled to assert qualified immunity.  We answer this question in the affirmative as well: Officer Briggs may assert qualified immunity.  Qualified immunity protects good actors— allowing law enforcement to perform their duties without risk related to mistakes—but imposes liability on those whose improper conduct falls outside the boundaries of qualified immunity.  Qualified immunity is also an important offset to the investigatory chilling effect sometimes cited as a policy basis to bar claims for negligent investigation.[8]  *See, e.g.*, *Wimer v. State*, 841 P.2d 453, 455 (Idaho App. 1992) ("We agree with the policy that to hold investigators liable for their negligent acts would impair vigorous prosecution and have a chilling effect on law enforcement." (citations omitted)); *Dever v. Fowler*, 816 P.2d 1237, 1242 (Wash. App. 1991) ("The reason courts have refused to create a cause of action for negligent investigation is that holding investigators liable for their negligent acts would

---

[8] The "chilling effect" risk has been called into question in modern commentary, noting the lack of empirical evidence and positing that the impact of recognizing a duty is merely that law enforcement hold themselves to reasonable standards.  *See* E. Olsen, *The Tort of Negligent Investigation: Canada's Recognition of the Tort as a Model for Improving Compensation for the Wrongfully Convicted*, 38 Wis. Int'l L. J. 617, 634– 37 (2021) (discussing the standard of care as an incentive for law enforcement to use sound practices and standards despite the common concern of chilling investigations reflected in case law from the United States).

11

impair vigorous prosecution and have a chilling effect upon law enforcement." (citations omitted)).

[¶33] Qualified immunity developed at common law and remains available through common law even if immunity is otherwise waived under the Wyoming Governmental Claims Act. *E.g.*, *Uinta Cnty. v. Pennington*, 2012 WY 129, ¶ 13, 286 P.3d 138, 142 (Wyo. 2012) (citing *Kimbley v. City of Green River*, 663 P.3d 871, 883 (Wyo. 1983)). We recognized its availability to law enforcement officers and investigators when sued for negligent investigation in *Blake v. Rupe*, 651 P.2d 1096, 1107–11 (Wyo. 1982) ("We find [qualified immunity] singularly simple and much easier to apply than the many complexities found in the general law of torts."), *superseded on an unrelated issue in Essex Holding, LLC v. Basic Properties, Inc.*, 2018 WY 111, ¶ 39, 427 P.3d 708 (Wyo. 2018). While prosecutors have absolute immunity in making charging decisions, law enforcement officers, including those operating as investigators, are afforded qualified immunity. *Id.* at 1101–06 (discussing prosecutors' absolute immunity) and 1107–11 (discussing law enforcement and investigators' qualified immunity). The party claiming qualified immunity must prove four elements: (1) the officer acted within the scope of their duties; (2) and in good faith; (3) the acts were reasonable under the circumstances; and (4) the acts were discretionary duties, not operational or ministerial.[9] *Pennington*, 2012 WY 129, ¶ 14, 286 P.3d at 142; *see also id.* at ¶¶ 17, 20, 286 P.3d at 143, 144 (defining each element in additional detail).

[¶34] The third element—whether the officer's acts were reasonable under the circumstances—is procedurally and substantively distinct from the duty analysis in the underlying negligence claim, thus affording law enforcement officers necessary threshold protections. We have reversed trial courts that equate the two standards. *Id.* at ¶¶ 27, 28, 286 P.3d at 145–46.

[¶35] Procedurally, because qualified immunity can deprive a court of subject matter jurisdiction, it is appropriate for disposition early in a case, prior to adjudication on the merits. *See Wyoming State Hosp. v. Romine*, 2021 WY 47, ¶ 8, 483 P.3d 840, 844 (Wyo. 2021); *Wallace*, 3 So. 3d at 1044–45 (citations omitted). Unlike the fact-intensive nature of a breach of duty analysis in a negligence claim, the reasonableness of the officer's conduct must be determined by the court as a matter of law. *Pennington*, 2012 WY 129, ¶ 16, 286 P.3d at 143 ("Whether a public official is entitled to qualified immunity is a question of law which the court must resolve." (citing *Layland v. Stevens*, 2007 WY 188, ¶ 12, 171 P.3d 1070, 1073 (Wyo. 2007))). While qualified immunity might not be appropriate for dismissal on a motion to dismiss, *Darrar v. Bourke*, 910 P.2d 572, 577

---

[9] The standard for qualified immunity under state common law is distinct from the federal standard. *Kanzler v. Renner*, 937 P.2d 1337, 1344 (Wyo. 1997). Federal qualified immunity in 42 U.S.C. § 1983 actions has two elements and the burden of proof is to be carried by the plaintiff. *E.g.*, *Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022).

(Wyo. 1996), it is appropriate for disposition at summary judgment once facts are sufficiently developed. *Pennington*, 2012 WY 129, ¶ 14, 286 P.3d at 142. As such, federal courts appropriately recognize the discretion of the trial courts in limiting discovery necessary for evaluating the threshold question of qualified immunity. *Stonecipher v. Valles*, 759 F.3d 1134, 1148–49 (10th Cir. 2014) (recognizing the trial courts' authority to stay, deny, or narrowly tailor discovery upon the filing of a dispositive motion based on qualified immunity "because qualified immunity protects against the burdens of discovery as well as trial" (citations omitted)).

[¶36] Equally important, a ruling on qualified immunity is usually appealable. *Romine*, 2021 WY 47, ¶ 16, 483 P.3d at 845 ("[A] denial of summary judgment based 'on a claim of governmental immunity' is appealable without the need for a writ of review." (citation omitted)); *Campbell Cnty. Mem'l Hosp. v. Pfeifle*, 2014 WY 3, ¶ 12, 317 P.3d 573, 576 (Wyo. 2014) ("The denial of a defendant's summary judgment motion is generally not a final appealable order. This Court recognizes an exception to that rule, however, in cases involving the denial of a defendant's claim of qualified immunity." (citations omitted)); *Watts*, 2008 WY 19, ¶ 9, 177 P.3d at 796 ("[L]ike an absolute immunity, [qualified immunity] is effectively lost if a case is erroneously permitted to go to trial." (quoting *Park County v. Cooney*, 845 P.2d 346, 349 (Wyo. 1992))).

[¶37] Substantively, reasonableness in the context of a qualified immunity analysis is defined "as having the faculty of reason; rational; governed by reason; being under the influence of reason; thinking, speaking, or acting rationally, or according to the dictates of reason; agreeable to reason; just; rational." *Pennington*, 2012 WY 129, ¶ 20, 286 P.3d at 144 (citations omitted); *Blake*, 651 P.2d at 1110 (citation omitted). This is a different legal standard than the reasonable person standard determinative of the underlying negligence claim:

> In order to show that he was entitled to qualified immunity, the Sheriff was not obligated to prove that all reasonably prudent law enforcement officers would have acted as he did. He was required to prove only that a reasonably prudent officer, under the same circumstances, might have reached the same decision.

*Pennington*, 2012 WY 129, ¶ 21, 286 P.3d at 144 (citation omitted). Thus, an officer establishes the reasonableness of his conduct for the purposes of qualified immunity even in the face of disagreement by other officers of reasonable competence. *Id.* "Whereas differences of opinion might create disputed questions of fact in negligence situations, differences of opinion as to the propriety of an officer's action have a different impact in determining whether a public official is entitled to qualified immunity." *Id.* at ¶ 16, 286 P.3d at 143.

13

[¶38] Qualified immunity serves important policy purposes—it recognizes the need to permit public officials "to perform their official functions free from the threat of suits for personal liability" and it protects law enforcement from the "risk of being mulcted in damages for mistakes [they] may make in the performance of [] public duties." *Blake*, 651 P.2d at 1108 (citation omitted). "Implicit in the idea that officials have some immunity—absolute or qualified—for their acts, is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all." *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 90 (1974)). The doctrine rests on two central rationales: (1) an inherent unfairness in imposing liability on law enforcement doing their discretionary work in the absence of bad faith, and (2) a recognition that such liability could chill law enforcement activity. *Id.* As a "qualified" immunity, however, it imposes liability when conduct falls outside the lines of the doctrine. *See id.* at 1108–09. Qualified immunity is, therefore, the better vehicle by which to evaluate responsibility for investigatory conduct than to reject any possibility of liability from the outset. Further, the elements of qualified immunity and its procedural components, including the ability to seek interlocutory appeal, serve these purposes by protecting law enforcement against unwarranted litigation on the merits of a negligence claim.

## *CONCLUSION*

[¶39] Law enforcement officers acting within the scope of their duties owe a common law duty to the suspect(s) in a criminal investigation to investigate as reasonable peace officers of ordinary prudence under like circumstances. Law enforcement officers acting within the scope of their duties when conducting a criminal investigation are entitled to assert qualified immunity.

**KAUTZ, J. dissenting, in which GRAY, J., joins.**

[¶40]  I respectfully dissent.

[¶41]  The question presented to us is "does a law enforcement officer acting within the scope of his or her duties as such owe a duty of care *to the suspect(s)* in a criminal investigation to conduct that investigation in a non-negligent manner?" (emphasis added). Unfortunately, the majority opinion provides no analysis of whether such a duty is owed *to the suspect*.  Applying the analytical framework this Court consistently uses to determine whether a duty exists, *see, e.g.*, *Gates v. Richardson*, 719 P.2d 193, 196 (Wyo. 1986); *Ortega v. Flaim*, 902 P.2d 199, 203, 206 (Wyo. 1995); *Mostert v. CBL & Assocs.*,741 P.2d 1090, 1094 (Wyo. 1987); *Duncan v. Afton, Inc.*, 991 P.2d 739, 744 (Wyo. 1999); *Andersen v. Two Dot Ranch, Inc.*, 2002 WY 105, ¶ 44, 49 P.3d 1011, 1024 (Wyo. 2002); *Natrona Cnty. v. Blake*, 2003 WY 170, ¶ 6, 81 P.3d 948, 951 (Wyo. 2003), I conclude that an investigating officer does not owe such a duty to a suspect.

[¶42]  Rather than performing a duty analysis, the majority jumps to the conclusion that an investigating officer does owe a duty of care to suspects when conducting investigations. To reach this conclusion without analysis, the majority relies on a generic duty statement found in cases where non-suspects claimed they benefited from a general duty of officers to act reasonably under the circumstances.  By leaping from this generic duty applied to non-suspects to a duty owed to suspects, the majority ignores fundamental tort law which only recognizes a duty in specific instances—applicable here in the context of the recipient or beneficiary of that duty.  The majority avoids applying our duty analysis which, I conclude, dictates against finding a duty.  By implication, the majority opinion concludes that an investigating officer owes a duty to everyone everywhere, without regard to their relationship to the officer or the claimed injury.  And, the majority opinion effectively recognizes a new tort in Wyoming permitting a criminal defendant to sue an investigating officer for simple negligence because a prosecutor filed criminal charges which were later dismissed.  The majority opinion puts Wyoming in a unique position—it appears every other state which has considered whether criminal suspects may sue an investigating officer for negligent investigation has concluded he or she may not.

**Tort Law on Duty**

[¶43]  "The threshold question in a negligence action is whether the defendant owed a legal duty *to the plaintiff*."  57 Am. Jur. 2d *Negligence* § 70 (emphasis added).  This court recognizes the basic negligence principle that duties are understood and applied only in the context of a beneficiary or recipient of the duty.  "The elements that a plaintiff must establish to maintain a negligence action in a court of law are: (1) that the defendant owed *to the plaintiff* a duty …."  *Keehn v. Town of Torrington*, 834 P.2d 112, 115 (Wyo. 1992) (emphasis added).  "In order to recover in any negligence action, a plaintiff must establish that the defendant owed a duty of care *to him*."  *Duncan v. Town of Jackson*, 903 P.2d 548,

15

551 (Wyo. 1995) (emphasis added). "To establish negligence, [a plaintiff] must prove: (1) the defendant *owed the plaintiff* a duty …." *Cornella v. City of Lander*, 2022 WY 9, ¶ 25, 502 P.3d 381, 387 (Wyo. 2022) (emphasis added) (internal quotation marks and citations omitted).

[¶44] In general, everyone has a basic duty to exercise reasonable care. We have mentioned this general duty as applicable to police officers, as well as others. This basic duty, however, only becomes a legal duty owed to a particular plaintiff when the relationship between the defendant and the plaintiff, and public policy considerations, indicate a legal duty should exist. 57 Am. Jur. 2d *Negligence* § 73. "The existence of a duty turns on the basic nature of the relationship between the parties to the cause of action. Thus, in determining whether a duty exists, the court should examine the relationship between the parties." *Id.*, § 78. Before this case, we have not considered the relationship between an investigating officer and a suspect to determine whether the officer owes this duty to a suspect.

[¶45] To examine the relationship between the investigator and Ms. Palm-Egle, it is necessary to restate the context for the question presented to us: A law enforcement officer investigated an alleged crime and delivered his findings, along with other information, to a prosecuting attorney. During the investigation someone, apparently on behalf of Ms. Palm-Egle, gave the investigator information that he apparently discounted and did not explore further. The prosecuting attorney then filed felony charges against Ms. Palm-Egle. After a circuit court judge found no probable cause[10] to bind those felonies over to district court, Ms. Palm-Egle sued the investigating officer, claiming he was negligent in conducting his investigation, apparently because he did not delve further into the information Ms. Palm-Egle's agent provided. Although the questions certified to us do not specifically list the damages Ms. Palm-Egle claims, it is obvious from her argument that she claims some sort of injury resulting from facing criminal charges.[11] The U.S. District Court submitted its duty question to us in generic terms, rather than in specific terms based on these facts. If we were directly presented with the duty question, it likely would be "did this investigator have a duty to follow up on evidence Ms. Palm-Egle believed was exculpatory before he submitted his information to the prosecutor?" Ideally, the question would have specified the damages Ms. Palm-Egle claims, because determination of whether a duty exists always requires an evaluation of the foreseeability of those damages. Nevertheless, it is possible to answer the more abstract question submitted by the U.S. District Court.

---

[10] The circuit court concluded there was no probable cause "to find that there was intent to possess … marijuana …." However, the crime of possession of a controlled substance is a general intent crime and does not require specific intent to possess.

[11] The majority suggests that other types of damages might result from an improper investigation, such as property damage or personal injury. Such damages would not result from negligent investigation, but instead from duties owed by someone taking possession of property to properly care for it, etc. Such damages are not related to the status of the plaintiff as a suspect or the officer's investigative actions.

16

[¶46] The majority opinion never examines the relationship between the investigator, Ms. Palm-Egle, and the charges which were filed to determine if an investigator should owe a duty to Ms. Palm-Egle. Instead, it relies on general duty of care statements from this Court which mention an officer's general duty to act reasonably. It asserts "we already recognize a duty owed by law enforcement officers _to citizens_." However, this Court has never analyzed nor determined that every law enforcement officer owes a general duty to act reasonably in every circumstance to every citizen or to suspects, specifically. It is not appropriate to conclude from the cases relied on by the majority that the "duty to act as a reasonable peace officer of ordinary prudence under like circumstances" applies beyond the facts of those cases or applies to every potential plaintiff.

[¶47] In _Cornella_, ¶ 26, 502 P.3d at 387, we recognized the general duty of reasonable care on the part of law enforcement officers. However, we stated that a duty arises when "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other …." Inherent in _Cornella_ was a consideration of the relationship between the officer and the plaintiffs and the damages they claimed. Our conclusion in _Cornella_, although implied rather than specifically stated, was that an officer who undertakes to deliver a potentially rabid bat for testing, on behalf of the family exposed to the bat, had a duty to the family to exercise reasonable care in doing so. The relationship between the plaintiffs and the officer, and the potential consequences of negligently performing that task, were key to our decision. _Cornella_ did not consider whether the officer owed that duty to anyone else, including suspects in criminal investigations. _Cornella_ shows that the duty of reasonable care applies to those specific circumstances, but it has no relationship to the facts here.

[¶48] Similarly, in _Keehn_, 834 P.2d at 115, we mentioned the general duty of an officer to act reasonably. However, all our statements about duty in _Keehn_ are dicta, as the case was not decided on the basis of duty. Rather, we found the trial court properly granted summary judgment in favor of the officer because there was no evidence he was negligent. Nevertheless, when we discussed duty in _Keehn_, we recognized the officer's duty was more specific than a general reasonableness obligation, and that there were specific beneficiaries of his duty to investigate DUI cases. We said "peace officers have a general duty to apprehend, arrest, and remove drunk drivers from Wyoming's roadways. This duty emanates from Wyoming's drunk driving law, Wyo. Stat. § 31-5-233 (June 1989). Section 31-5-233, [was] enacted for the protection of the public at large as well as for the individual inebriate and his/her passengers." _Id._ (citation omitted). Consistent with standard tort law, we did not simply impose on the officer a general duty of reasonable care applicable to the entire public, but rather we considered the relationship of the parties and identified the beneficiaries of the officer's specific duties. We must do the same in this case.

[¶49] In _Duncan_, 903 P.2d 548, we considered a claim by the family of a victim in a car crash. The family claimed an officer failed to adequately investigate the scene of the crash to determine if the victim was still in the car. Although the Court quoted _Keehn_ stating

17

that an officer generally has a duty to act reasonably under the circumstances, that statement was not the basis of the decision. *Id*. at 552. We did not consider whether such a duty might apply to every citizen, or even to the victim of the crash. Rather, we recognized that questions of whether the officer had a legal duty to the victim of that crash remained unanswered and would necessarily be decided later in the trial proceedings. We said "[g]enuine issues of material fact exist, and they include but are not limited to: . . . 3) whether, even if [the officer] was not required to respond to the emergency, once he did respond he owed a legal duty to [the victim] …." *Id.* at 553. *Duncan* did not analyze or establish that an officer owes a duty of reasonableness to every citizen, nor did it consider whether an officer investigating a potential crime owes any duties to a suspect. It did not discuss the relationships between an officer and every citizen, or between an officer and a suspect, to determine if any legal duty exists. Like *Cornella* and *Keehn*, *Duncan* did not determine what, if any, duties apply between an investigating officer and a suspect.

**Duty Factors**

[¶50] Because this Court has never analyzed the relationship between an investigating officer and a suspect to determine what legal duties, if any, apply between them, it is necessary to do so here.

[¶51] In deciding "whether a duty should be imposed based on a particular relationship," this Court considers multiple factors: "(1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved." *Natrona Cnty.*, ¶ 6, 81 P.3d at 951. Analysis of these factors shows a law enforcement officer acting within the scope of his or her duties does not owe a duty of care to a suspect in a criminal investigation to conduct the investigation in a non-negligent manner.

[¶52] The first factor, foreseeability of harm to the plaintiff, "is the most important … and 'is the fulcrum on which duty—its existence or absence—rests.'" *Wilcox v. Sec. State Bank*, 2023 WY 2, ¶ 40, 523 P.3d 277, 287 (Wyo. 2023) (citation omitted). The alleged harm (the filing of criminal charges which are eventually dismissed) to any suspect cannot be a foreseeable result from simple negligence on the part of the investigating officer because the prosecutor alone makes the charging decision. *See Hirsch v. State*, 2006 WY 66, ¶ 11, 135 P.3d 586, 591 (Wyo. 2006) (recognizing that "[t]he prosecutor is vested with the exclusive power to determine who to charge with a crime and with what crime to charge them") (alteration added) (citation omitted).

18

[¶53]  In addition to the general lack of foreseeability described above, the foreseeability requirement presents two specific problems for Ms. Palm-Egle's claim that she was harmed by the officer's investigation.  First, her claim requires a determination that the prosecutor should not and would not have filed the charges had the officer conducted additional investigation.  If the prosecutor would have filed the charges in any event, Ms. Palm-Egle cannot establish harm from the investigation.  However, no one could foresee whether this prosecutor would or should file charges, with or without any additional investigation.  Prosecutors are not required to have perfect cases before they file charges.  They are not even required to have probable cause, although lack of probable cause can quickly create problems for their case.  The decision on whether to file charges was in the exclusive discretion of this prosecutor, based on whatever factors he found appropriate.

[¶54]  A second specific foreseeability problem that disconnects the officer's investigation from any claimed harm by Ms. Palm-Egle is that there was no foreseeable connection between the officer's investigation and at least some of the charges being dismissed.  The charges were a foreseeable harm to Ms. Palm-Egle _only_ if it was axiomatic that they would be dismissed.  If the charges were not dismissed, Ms. Palm-Egle could not claim to wrongfully have been damaged.  In this case it could not have been foreseeable that the circuit judge would determine there was no probable cause for some of the felony charges, nor that the circuit judge would incorrectly dismiss the possession charge based on intent.

[¶55]  In sum, the kind of damages a charged suspect would claim, based on charges being filed and then dismissed, simply are not a foreseeable result of an investigator's negligent actions.

[¶56]  The second factor, the closeness of the connection between the defendant's conduct and the injury claimed, "is 'a corollary of foreseeability,'" and "considers other contributions to the harm." _Wilcox_, ¶ 43, 523 P.3d at 288 (citations omitted).  Assuming that the filing of charges constitutes harm to a suspect, many other factors may contribute to that action beyond the officer's investigation.  The prosecutor decides to file the charges.  At some point a judicial officer must determine whether there is probable cause to support felony charges.   There is not a close connection between an officer's negligent investigation and a suspect's "damage" from facing criminal charges.

[¶57]  The third factor, the degree of certainty that the plaintiff suffered injury, also weighs against finding a peace officer has a duty to a suspect to conduct an investigation in a "nonnegligent" manner.  The suspect here apparently claims injury from the criminal charges having been filed.  In contrast to the more typical injury cases, where there is a higher degree of certainty that injury resulted from the defendant's actions, a suspect's claim for negligent investigation does not present an obvious physical injury. _See_, _e.g._, _Becker v. Mason_, 2006 WY 143, ¶¶ 1, 4, 145 P.3d 1268, 1269 (Wyo. 2006) (plaintiff sought wrongful death damages after the decedent was killed in a motor vehicle collision with a drunk driver the deputy sheriff failed to stop from driving); _Bd. of Cnty. Comm'rs ex rel._

*Teton Cnty. Sheriff's Dep't v. Bassett*, 8 P.3d 1079, 1082 (Wyo. 2000) (plaintiffs sought damages for injuries suffered in motor vehicle collision partially caused by officers' failure to enforce a roadblock); *Duncan*, 903 P.2d at 550 (plaintiff sought damages for decedent's wrongful death based on law enforcement's alleged negligent motor vehicle accident investigation); *DeWald v. State*, 719 P.2d 643, 645-46 (Wyo. 1986) (plaintiff sought damages for wrongful death of decedent killed in motor vehicle collision caused by law enforcement's negligent high speed chase). Other potential claimed damages, such as emotional distress or attorney fees, are not obviously the result of facing criminal charges and have limited availability in Wyoming.

[¶58] The fourth factor, the moral blame attached to the defendant's conduct, assesses "whether the defendant is morally culpable before imposing liability." *Larsen v. Banner Health Sys.*, 2003 WY 167, ¶ 30, 81 P.3d 196, 205 (Wyo. 2003). "Moral blame generally results from situations in which the defendant had direct control over establishing and ensuring proper procedures to avoid the harm caused or where the defendant is the party best in the position to prevent the injury." *Moses Inc. v. Moses*, 2022 WY 57, ¶ 39, 509 P.3d 345, 356 (Wyo. 2022) (citations omitted). As with the other factors, the prosecutor has control over the quality of the information used as the basis for criminal charges. The prosecutor, not the investigator, controls the filing of charges. Certainly, an officer who damages a suspect's property, violates constitutional rights, or causes personal injury is morally culpable for those actions because he has primary control over his actions. However, those are not the damages or relationships which are relevant to the question before us. In general, the investigating officer has no control over the charges being filed against a suspect. Even if the officer was negligent, the choice to file the charges rests exclusively with the prosecutor.

[¶59] The fifth factor, the policy of preventing future harm, weighs against an officer's duty to conduct a "non-negligent" investigation of a suspect. As discussed, a peace officer's investigation does not cause harm to a suspect, i.e., the filing of charges and attendant consequences. The entity with the strongest motivation and ability to prevent harm (if it is harm) from the filing of criminal charges is the prosecuting attorney, not the investigating officer. When a peace officer presents investigatory materials to a prosecutor, the prosecutor has the sole responsibility to assess whether criminal charges are appropriate or whether the law enforcement officer should conduct additional investigation. Once a prosecutor files charges, a judicial officer reviews the charges and supporting affidavits to make a probable-cause determination, and if that judicial officer finds probable cause, the adversarial process commences, affording the defendant additional opportunities to challenge the filing of charges. Our system of criminal justice already has substantial and appropriate procedures to protect against the type of "harm" a criminal suspect would claim as a result of facing charges.

[¶60] The sixth factor we consider in determining whether there is a legal duty, the burden upon the defendant, considers the negative consequences to the defendant of imposing a

duty in a particular relationship. Recognition of a duty to conduct a "non-negligent" investigation for the benefit of suspects will have substantial negative consequences to law enforcement officers. It will create a new tort in Wyoming—the tort of negligent investigation. It will invite every criminal defendant who is acquitted or has charges dismissed after a preliminary hearing to sue police officers claiming negligent investigation. Officers will be reluctant to investigate, especially in close cases, for fear of being sued. Many courts have recognized that imposing on investigators a duty of care to a suspect impairs vigorous prosecution and has a chilling effect on law enforcement. *See Lahm v. Farrington*, 90 A.3d 620, 624 (N.H. 2014) (stating "police officers' interest in conducting criminal investigations without fear of liability for negligence … weighs heavily against the significant interests of criminal suspects"); *Smith v. State*, 324 N.W.2d 299, 301 (Iowa 1982) ("to assure continued vigorous police work, those charged with that duty [to investigate crime] should not be liable for mere negligence"); *Wimer v. State*, 841 P.2d 453, 455 (Idaho 1992) ("[w]e agree with the policy that to hold investigators liable for their negligent acts would impair vigorous prosecution and have a chilling effect on law enforcement"); *Dever v. Fowler*, 816 P.2d 1237, 1242 (Wash. Ct. App. 1991), *as amended* 824 P.2d 1237, 1238 (Wash. Ct. App. 1992) ("The reason courts have refused to create a cause of action for negligent investigation is that holding investigators liable for their negligent acts would impair vigorous prosecution and have a chilling effect upon law enforcement.")

[¶61]   The seventh factor, the consequences to the community and the court system, "has generally been thought of as weighing the negative aspects of creating a new cause of action." *Larsen v. Banner Health Sys*., 2003 WY 167, ¶ 32, 81 P.3d 196, 205 (Wyo. 2003). It considers the negative consequences of recognizing a duty not on the officer (sixth factor) but on the court system and the public.

[¶62]   This factor weighs heavily against a legal duty of non-negligent investigation owed by officers to suspects. Recognition of such a duty would not only negatively impact officers in their investigations, but it would also have significant negative consequences on the community and the court system. This duty would invite litigation, impair vigorous prosecution, and have a chilling effect on law enforcement. The Iowa Supreme Court summarized this public policy consideration well: "The public has a vital stake in the active investigation and prosecution of crime. Police officers and other investigative agents must make quick and important decisions as to the course an investigation shall take. Their judgment will not always be right; but to assure continued vigorous police work, those charged with that duty should not be liable for mere negligence." *Smith*, 324 N.W.2d at 301.

[¶63]   An additional negative consequence to the public and the courts from recognition of this new duty and tort is that criminal defendants will be able to circumvent the strict requirements of a malicious prosecution claim. Until now a criminal defendant who wished to sue an investigating officer or the prosecutor (effectively suing the state) was

21

required to bring a malicious prosecution claim or a claim under 42 U.S.C. § 1983. These claims provide appropriate avenues for recovery by a suspect who alleges to have been improperly charged or investigated, while protecting the public's interest in vigorous investigation and prosecution of crimes. We recognized in *Cates v. Eddy*, 669 P.2d 912, 918 (Wyo. 1983), that allowing actions for malicious prosecution could have a chilling effect on law enforcement but concluded that the heightened requirements of a malicious prosecution claim – malice and lack of probable cause – sufficiently balanced the interest of the public in having wrongs investigated and prosecuted against the interest of redress for actual wrong and damage. Recognition of a duty on peace officers??? to conduct a non-negligent investigation for the benefit of suspects abandons that balance, at the expense of the public interest. Criminal defendants who have a charge dismissed or are acquitted would entirely avoid well-reasoned requirements for a malicious prosecution by claiming an officer acted "unreasonably."

[¶64] The courts and the public will encounter practical difficulties as a result of the majority decision—additional negatives related to the seventh factor. The first of these difficulties results from the majority's conclusion that police officers always owe a duty of reasonableness to everyone, without regard to the relationship of the parties or the foreseeability of the injury. If that is true, then an officer's duty in investigating a crime benefits anyone and everyone. Anyone and everyone, even those remote to the case, could sue the officer, claiming the investigation somehow harmed them. Employers of suspects could sue police officers, claiming a negligent investigation of an employee resulted in criminal charges and the employer lost money due to the employee's absence. Unpaid creditors of a suspect could sue police officers, claiming negligence in investigation resulted in the suspect's failure to pay an obligation. Before this decision, claims of this sort would be dismissed at the outset, because the relationship between the investigating officer and the plaintiff did not create the existence of a duty owed to the plaintiff. Now, because the majority declares an officer has a duty to everyone without regard to relationship, the viability of remote claims like these will not be tested as a question of duty—a matter of law—but as a factual question of causation.

[¶65] Another practical difficulty resulting from this new tort of negligent investigation is that prosecutors will be called to court to explain their charging decisions. Juries will be required to allocate fault between investigating officers and prosecutors for the charges which were filed. It is difficult to imagine how a jury will be instructed to determine the percentage of "fault," if any, which is allocated to the investigating officer and the percentage which is allocated to the prosecutor who could have or should have reviewed the officer's work more carefully.[12] Prosecutors, who should have complete discretion as to charging decisions, will no longer enjoy that status.

---

[12] The jury will also be required to allocate the percentage of fault applicable to the plaintiff.

[¶66]  As we have no information about the availability of insurance to cover the tort of negligent investigation resulting in wrongful criminal charges, we cannot consider the eighth factor in our duty analysis.

[¶67]  An analysis of the factors used to determine whether a duty applies to a particular relationship leads to only one conclusion – Wyoming should not recognize a legal duty owed by a law enforcement officer to suspects to conduct an investigation in a non-negligent manner.  Had the majority engaged in such an analysis, it would have reached the same conclusion.

## CONCLUSION

[¶68]  I would answer "No" to the question presented to us: "Does a law enforcement officer acting within the scope of his or her duties as such owe a duty of care *to the suspect(s)* in a criminal investigation to conduct that investigation in a non-negligent manner?"